**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES GARAVAGLIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-CV-1681-CDP |
| | ) | |
| CITY OF ST. LOUIS, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**JOINT MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this lawsuit, Plaintiff James Garavaglia ("Plaintiff") has sued the City of St. Louis ("City") and Comptroller Darlene Green ("Green"), in her personal capacity, for claimed discrimination under Section 1981 of the Civil Rights Act of 1991 ("Section 1981") and Section 1983 of the Civil Rights Act of 1866 ("Section 1983").  Plaintiff claims Green initiated forced leave and a pre-termination review because of his race, sex and age, rather than for legitimate reasons.  However, during his deposition, Plaintiff conceded that he has absolutely no evidence that Green or the City took any of the challenged actions based on his race, age or sex.  Instead, he bases his discrimination claims solely on the fact that the City hired a black woman as Deputy Comptroller, Finance and Development after he retired, and his purely subjective interpretation of two events: (1) Green commenting in 2016 that Plaintiff could "retire in a couple of years on top" during  a congratulatory phone call, and (2) Green asking Plaintiff in 2019 if he and Green's other deputy comptroller planned to continue with Green after the upcoming election.  None of this "evidence" is sufficient to support either a claim for discrimination or constructive discharge.

On the contrary, the testimony of Plaintiff and other City personnel firmly demonstrates that Plaintiff was placed on forced leave on July 2, 2019 for mishandling important closing documents for a multi-million City redevelopment project (the "Muni Court Project"). Notably, the City's Personnel Director, Richard Frank, approved Green's recommendation to place Plaintiff on forced leave. Thereafter, City personnel discovered that Plaintiff had engaged in various other derelictions of duty and misconduct, the most significant of which included Plaintiff improperly signing multiple City contracts without authorization—despite repeated admonitions from Green, both orally and in writing, that he had no such authorization.  In improperly executing contracts purporting to bind the City, Plaintiff acted illegally and in violation of the City's Code of Conduct by bypassing processes formulated consistent with the City's Charter that require such contracts to be approved by the City Counselor as to form, presented to the City's Board of Estimate and Apportionment ("E&A") for approval, signed by Green in her capacity as the City's Comptroller (or her authorized designee), assigned a City contract number, and recorded as a valid contract with the City's Register Office ("Register").  In the case of one illegal contract with Waste Management of Missouri, Inc., Plaintiff falsely testified under oath that he did not sign the contract (suggesting his signature was forged), but documents produced in response to a subpoena served on Waste Management of Missouri, Inc. contain emails from Plaintiff confirming that he did.

Plaintiff's admissions, his false testimony under oath, his execution of illegal contracts, together with the undisputed testimony of other City employees, establish that no reasonable jury could conclude that Plaintiff was discriminated against based on his age, race or sex, or that his resignation, in the face of investigative and pre-termination proceedings, constituted a constructive discharge.  Moreover, even if Plaintiff had presented sufficient evidence establishing a prima facie case of discrimination or constructive discharge (which he has not), the undisputed evidence of

Plaintiff's misconduct establishes that Defendants had legitimate, non-discriminatory reasons for: a) placing Plaintiff on forced leave, b) conducting an investigation, and c) initiating a pre-termination review in accordance with the City of St. Louis Department of Personnel Administrative Regulation 117 ("Regulation 117"). Plaintiff chose to retire in the face of an investigation into his admitted misconduct and was not constructively discharged. Accordingly, both the City and Green are entitled to summary judgment in their favor as a matter of law on all counts of Plaintiff's Second Amended Complaint ("SAC").

## PROCEDURAL AND FACTUAL SUMMARY

Plaintiff retired from the City effective October 1, 2019, after working in its Comptroller's office over 32 years. Plaintiff last worked as Deputy Comptroller, Finance and Development, a position to which Green promoted him in May 2016—even though he admittedly had deficiencies in public finance. Plaintiff subsequently sued the City and Green ("Defendants") claiming they discriminated against him because of his age, sex and race, and constructively discharged him. Plaintiff, a white 66-year-old male, alleged that Green, an African American woman, intended to get rid of him when she promoted him and replace him with a younger, African American female.

On July 2, 2019, Green initially placed Plaintiff on forced leave based on his mishandling of Muni-Court documentation, during which Plaintiff received paid vacation and did not lose any employment benefits. The forced leave was reissued as an investigation revealed further evidence of misconduct. Plaintiff claims Green initially placed him on forced leave without cause, and Green deprived him of the right to appeal his forced leave to the Civil Service Commission by withdrawing his forced leave and then reinstituting it.

On August 28, 2019, Green issued a pre-termination notice, setting forth the grounds and scheduling a pre-termination review for September 12, 2019. Two days later, and prior to any pre-

3

termination review, on August 30, 2019, Plaintiff submitted a retirement application, notifying

City of his intent to retire effective October 1, 2019. By reason of Green's withdrawals of the

forced leaves, the City restored all paid vacation leave Plaintiff used during his forced leave, and

the City paid Plaintiff his full salary between July 2, 2019 and September 30, 2019. In January

2020, the City promoted LaTaunia Kenner, an African American woman, as Deputy Comptroller,

Finance and Development.  On November 27, 2020, Plaintiff filed this suit against Defendants.

On February 19, 2021, the Court dismissed Plaintiff's claims against Green in her official

capacity. On October 5, 2021, the Court granted Green's motion to dismiss the SAC to the extent

it could be construed to include claims against her under Title VII, the ADEA and the MHRA, or

seek recovery for placing Plaintiff on forced leave. Noting that some of Green's arguments as more

appropriate for summary judgment, the Court denied the rest of her motion so as to afford Plaintiff

an opportunity to present evidence to support his claims. (Doc. #60, PageID #282-283).

For the reasons discussed herein, together with the Statement of Uncontroverted Material

Facts (SUMF), summary judgment should be granted to Defendants on all of counts because:

- Plaintiff has not adduced evidence of circumstances giving rise to an inference of discrimination to establish a prima facie claim because:

  o Plaintiff admits he has no evidence establishing any race, sex or age motivation and that his claims are based solely on the fact that a younger, African American woman replaced him, and he believed Green always intended to replace him with a younger, black woman;

  o Plaintiff cannot rebut the same actor inference arising from the undisputed fact that Green promoted Plaintiff and recommended a 10% raise [5% more than he was entitled];

  o Plaintiff has not adduced any comparator evidence; any evidence of racial slurs, ageist comments or gender discriminatory conduct; or any other background circumstances to support reverse racism.

- Plaintiff has not presented evidence to enable a jury to find that his working conditions were so intolerable as to compel a reasonable person to resign,

4

as necessary to prove constructive discharge as the adverse employment action element of a prima facie claim of discrimination;

- Plaintiff did not give Defendants an opportunity to correct the alleged intolerable conditions before resigning, as necessary to prove constructive discharge as the adverse employment action element of a prima facie claim;

- Defendants had legitimate, non-discriminatory reasons for placing Plaintiff on forced leave and issuing a pre-termination notice, including, but not limited to, mishandling Muni Court Project documents and illegally signing contracts contrary to his supervisor's instructions (and also in violation of the City Charter and the City's Employee Code of Conduct ("Code of Conduct"); and

- Plaintiff has not presented any evidence demonstrating Defendants' reasons for forced leave and initiating pre-termination proceedings were pre-textual.

**LEGAL STANDARD**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"The movant bears the burden of establishing that (1) [he] is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact." *Zurich Am. Ins. Co. v. Ins. Co. of N. Am.*, 392 F. Supp. 3d 992, 995 (E.D. Mo. 2019). "Once the movant has met this burden, [ ] the nonmoving party may not rest on the allegations in [hi]s pleadings but, must, by … evidence, set forth specific facts showing that a genuine issue of material fact exists." *Id*. at 996.

"Even if some factual dispute exists, the movant is entitled to summary judgment if the evidence, taken as a whole, is so one-sided that a fair-minded trier of fact could not find for the nonmoving party." *Ball v. City of Lincoln, Nebraska*, 870 F.3d 722, 727 (8th Cir. 2017) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986)). "[T]he mere existence of *some* alleged

factual dispute between the parties" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson*, 477 U.S. at 247) (emphasis in original). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Employment discrimination claims under Title VII, the ADEA, the MHRA, Section 1981 and Section 1983 are subject to the same legal analysis. *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 775-76 (8th Cir. 1995); *Bonenberger v. St. Louis Metro. Police Dep't.*, No. 4:12-CV-21 CDP, 956 F. Supp. 2d 1059, 1065–66 (E.D. Mo. 2013). "Without direct evidence, a plaintiff establishes a prima facie case of [ ] discrimination by showing: (1) []he belongs to a protected group; (2) []he was qualified for h[is] former job; (3) []he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 796–97 (8th Cir. 2021). "Once a prima facie case is established, the defendant must articulate a 'non-discriminatory reason for the allegedly discriminatory action.'" *Id*. at 797 (citations omitted). "If the defendant meets this burden, the plaintiff must then show 'the articulated reason is a mere pretext for a discriminatory motive.'" *Id*.

In this case, Plaintiff has failed to adduce evidence that any of the challenged actions were based on his race, age or sex or that would demonstrate any constructive discharge. The undisputed evidence shows that Plaintiff suffered no adverse employment action because he admittedly lost no employment benefits. Thus, Plaintiff has not demonstrated, and cannot demonstrate, a prima facie case of age, race or sex discrimination. Even if there were sufficient evidence to state a prima facie claim (which there is not), the undisputed facts show that Defendants had legitimate, non-

discriminatory reasons for the forced leave and pre-termination review decisions, and Plaintiff has not adduced evidence of pretext.  Summary judgment is warranted.

## ARGUMENT

**I.    Plaintiff Has Not Adduced Evidence of Circumstances Permitting An Inference Of Discrimination to State a Prima Facie Claim To Survive Summary Judgment.**

### A.  Plaintiff's Replacement by A Younger, African American Woman Is Insufficient.

Plaintiff's discrimination claims are based solely on the fact that the City ultimately hired a younger, African American woman to replace him after he retired in the face of a pre-termination review.  (SUMF ¶147.) However, that fact alone is insufficient to raise a reasonable inference of discrimination. *See Main v. Ozark Health, Inc.*, 959 F.3d 319, 327–28 (8th Cir. 2020) ("Finally, that [plaintiff's] successor is male and twenty-two years younger than her cannot, by itself, create an inference that [plaintiff] was terminated based on her sex and age."); *Nelson v. J.C. Penney Co., Inc.*, 75 F.3d 343, 346 (8th Cir. 1996) ("the fact that [plaintiff's] replacement … was significantly younger than he [has], in our view, insufficient probative value to persuade a reasonable jury that [plaintiff] was discriminated against. Such a fact is consistent with age discrimination, but it cannot alone support a reasonable inference of it."); *see also Percoco v. Lowe's Home Centers, LLC*, 208 F. Supp. 3d 437, 445 (D. Conn. 2016) (defendant's replacement of plaintiff with an individual of a different race than plaintiff "may be relevant, but this [fact] alone cannot defeat summary judgment"); *Hinkle v. City of Wilmington*, 205 F. Supp. 3d 558, 572 (D. Del. 2016) (rejecting plaintiff's argument that replacing plaintiff, a woman, with a man was dispositive and further finding that "[a]bsent any additional evidence of defendants exhibiting gender discrimination, [such] [fact] was not compelling"); *Blanke v. Rochester Tel. Corp.*, 36 F. Supp. 2d 589, 597 (W.D.N.Y. 1999) ("Replacement by a person of a different race may suffice to make out

the fourth element of a *prima facie* case under Title VII, but without additional evidence of discriminatory intent, it is insufficient at the summary judgment stage.").

**B.  Plaintiff's Subjective Belief Of Discrimination, Without More, Is Insufficient.**

Plaintiff's unsupported belief that, at the moment she promoted him, Green intended to replace him in a couple of years with a younger, black woman neither creates a material issue of fact nor constitutes "evidence" to defeat summary judgment. (SUMF ¶147).  *See, e.g., Yeargans v. City of Kansas City, Mo.*, 2019 WL 4247837, at *6, n.16 (W.D. Mo. Sept. 6, 2019) ("plaintiff's belief that he was the victim of discrimination …, without more, is not evidence of race discrimination."); *Thomas v. Wells Fargo Bank, N.A.*, 2022 WL 748590, at *3–4 (D. Minn. Mar. 11, 2022) (plaintiff's belief that defendant's actions were discriminatory was not evidence that created a material issue of fact to defeat defendant's motion for summary judgment); *Jones v. Forrest City Grocery Inc.*, 2008 WL 2717738, at *6 (E.D. Ark. Jun. 26, 2008) ("[I]t is well settled, that a plaintiff's beliefs or feelings cannot create a triable issue of discrimination.")

When asked if he had any "evidence" other than his subjective "belief" that Defendants had discriminated against him, Plaintiff admitted he had none. He testified, in pertinent part:

> Q     All right.  Other than that comment, that phone call with the Comptroller, can you identify any other information that you can provide to us to suggest to you that it was her intention when she hired you to get rid of you in a couple of years?
>
> A     It is my feeling that I was brought in as a placeholder.  I was put in a position because I was a logical best option choice to fill the role for a period of time until such point in time that she was able to promote whom she really wanted in that role.
>
> Q     And whom would that be?
>
> A     It would be someone that was more like the prior Deputy, a young black female.
>
> Q     And what I am trying to get at is evidence.  You say that's your belief, your suspicion, but do you have any evidence that you can share with us, any

memos, any discussions with the Comptroller that you can share with us to support that belief?

A        Not at this time, but I possibly could recall something later.

(Garavaglia Deposition, p. 72, lines 4-24) (SUMF ¶147)

***

Q … Other than your belief, what evidence do you have that that was her intent?

A By the fact that she replaced me with –

Q Right.

A -- a younger black female.

***

Q So the fact that she replaced you with an African American female, that's -- in your view, that's your smoking gun; is that right?

A Yeah.

Q Okay. Fair enough.

A That's what she did.

Q .... And -- and that's all you have as it relates to race; correct?

A At this point in time, that's all I can recall.

(Garavaglia Deposition, p. 131, lines 2-25; p. 132, lines 1-9) (SUMF ¶147.)[1]

"To survive a motion for summary judgment, the nonmoving party must 'substantiate h[is]

allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on

---

[1] Plaintiff does not contend that Director Frank (a 61-year-old white man who approved the forced leave), Beverly Fitzsimmons (a white female who repeatedly urged Plaintiff to update Green regarding the Muni Court Project), Judy Armstrong (an African-American woman who discovered that Plaintiff had improperly signed additional City contracts), Chana Morton, an African-American woman who documented Plaintiff's mishandling of the Muni Court Project documents), or Dr. Ishmael Ikpeama (who conducted the Gateway Transportation internal audit), would have discriminated against him.  (Garavaglia Deposition, p. 74, lines 9-25; p. 75, lines 1-25; p. 76, lines 1-25; p. 77, lines 1-25; p. 78, lines 1-4).

more than mere speculation, conjecture, or fantasy.'" *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 539 (8th Cir. 2014) (citations omitted). "Evidence, not contentions, avoids summary judgment." *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 578 (8th Cir. 2006).  *See also  Kneibert v. Thomson Newspapers, Mich. Inc.*, 129 F.3d 444, 455 (8th Cir. 1997) (party opposing summary judgment must provide sufficient probative evidence which would permit the court to rule in its favor rather than engaging in conjecture and speculation); *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791–92 (8th Cir. 2009) (plaintiff "may not merely point to unsupported self-serving allegations" but must "substantiate" his allegations with "sufficient probative evidence that would permit a finding in his favor, without resort to speculation, conjecture or fantasy") (citations omitted).

### C.     Plaintiff Cannot Rebut The Same Actor Inference.

Notably, Plaintiff freely admits that Green promoted him in June 2016 to replace a prominent African American female employee who had worked in that position for 20 years. (SUMF ¶14; SJ Ex. 1, pp. 26, 33, 137.) It is also undisputed that, when Green promoted Plaintiff, she requested and obtained approval to give him a 10% raise, which was above the normal 5% step raise he would have otherwise received.  (SUMF ¶¶24-25.)

It is further undisputed that Plaintiff received annual salary increases in June 2017 and June 2018, despite his claims that Green did not provide him with a performance rating.  (SUMF ¶187.) It is also undisputed that: a) it is a common practice for supervisors not to rate their subordinate employees (SUMF ¶183); and b) although Green submitted initially required ratings for all personnel, she did not rate any employees on an annual basis, including younger African American female employees, once they successfully completed their working test period. (SUMF ¶180.)

These undisputed facts entitle Defendants to a presumption that Plaintiff's age, race and sex were not motivating factors in the forced leave and pre-termination decisions. *See, e.g.*, *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 877 (8th Cir. 2008) ("[I]t is unlikely a supervisor would hire an older employee and then discriminate on the basis of age, and such evidence creates a presumption against discrimination."); *Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006) (there is "a strong inference" that discrimination was not a motivating factor if the same actor hired and fired employee); *Lowe v. J.B. Hunt Transp., Inc*., 963 F.2d 173, 174–75 (8th Cir. 1992) (same-actor inference merited a directed verdict for defendant); *Hayes v. Express Scripts*, 2021 WL 409840, at \*5 (E.D. Mo. Feb. 5, 2021) ("an inference arises that the [employer's] decision was not motivated by discriminatory animus" where it is undisputed that defendant hired plaintiff two years before the alleged discrimination and approved a raise for her "only months before her termination"); *Kramer v. K&S Assocs.*, 942 F. Supp. 444, 448 (E.D. Mo. 1996) (that the same actor was responsible for hiring employee and reducing his wages two years later ran counter to any reasonable inference of age discrimination even where a younger person replaced plaintiff after his voluntary termination); *Forrest City Grocery Inc*., 2008 WL 2717738, at \*6.

### D.  Plaintiff Has Not Adduced Background Circumstances To Show Reverse Racism.

 "In a reverse-racism case, [ ] plaintiff must show that 'background circumstances support that [ ] defendant is that unusual employer who discriminates against the majority.'" *Schaffhauser v. United Parcel Service, Inc.*, 794 F.3d 899, 903 (8th Cir. 2015) (quoting *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004)); *see also Bonenberger*, 956 F. Supp. 2d at 1066 (same).

Here, Plaintiff has not adduced evidence of any background circumstances to show that the City is "that unusual employer who discriminates against the majority." *Schaffhauser*, 794 F.3d at 903. He has not adduced evidence of a single racist, sexist or ageist comment or epithet made at

any time. *See, e.g., Bozue v. Mut. of Omaha Ins. Co*., 536 F. Supp. 3d 438, 455 (E.D. Mo. 2021) (finding no inference of discrimination where, among things, plaintiff "presents no evidence that the decision makers made any discriminatory comments or actions … at any time ….")

Plaintiff has also not adduced any comparator evidence that any similarly situated employee engaged in similar conduct (*i.e.*, signed contracts without authorization, mishandled legal documents exigently needed for execution, etc.) and was treated more favorably. *See, e.g.*, *Thomas*, 2022 WL 748590, at *3 ("Without other circumstances giving rise to an inference of discrimination, the lack of a legally sufficient comparator warrants summary judgment[.]").

And, although Plaintiff alleged in his EEOC charge that there was a clear pattern and practice of discriminatory treatment of non-black, older, male employees by Green, he acknowledged in his deposition that he has no evidence to support this allegation. (SUMF ¶154.)

At least five material undisputed facts squarely refute that Defendants are the "unusual employer who discriminates against the majority." *Schaffhauser*, 794 F.3d at 903. First, two older, white persons worked in both of the deputy comptroller positions (i.e. the very top two positions reporting to the Comptroller) during the last 3-1/2 years of Plaintiff's employment with the City. (SUMF ¶¶16, 22.) Second, after the death of Ivy Pinkston, who served as Deputy Comptroller, Finance and Development, Green promoted Plaintiff, an older, white male, to fill that position. (SUMF ¶¶14, 16-17.) Third, Personnel Director, Richard Frank, a 61-year-old white male, approved Green's request to place Plaintiff on forced leave. (SUMF ¶89.) Fourth, after being promoted to Deputy Comptroller, Finance and Development and before retiring, Plaintiff never complained to the City that he believed he was discriminated against. (SUMF ¶¶128, 188.) Fifth, Defendants' forced leave and pre-termination decisions were consistent with Regulation 117 and personnel practices in the City. (SUMF ¶¶159-179.)

Hence, no prima facie case has been established, and summary judgment is warranted.

**II.    No Intolerable Conditions Existed As To Compel A Reasonable Person To Resign**.

"To prove a case of constructive discharge, a plaintiff must show (1) a reasonable person in h[is] situation would find the working conditions intolerable, and (2) the employer intended to force h[im] to quit." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 534 (8th Cir. 2008).  The first element requires evidence that the working conditions were such that "a reasonable person in [plaintiff's] situation would find the working conditions intolerable[,]" which is a "substantial" burden to meet. *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 810–11 (8th Cir. 2008).  A plaintiff may only satisfy the second element regarding the intent requirement by showing that plaintiff's resignation "was a reasonably foreseeable consequence of [his] employer's discriminatory actions."  *Hukkanen v. Int'l Union of Operating Eng'rs*, *Hoisting & Portable Local No. 101*, 3 F.3d 281, 285 (8th Cir. 1993).

Unlike most plaintiffs who claim constructive discharge, Plaintiff neither alleges nor adduces any evidence of being subjected to racially offensive epithets, ageist remarks, or a gauntlet of sex-based harassment at work.  To the contrary, Plaintiff testified only that before he received the forced leave notice on July 2, 2019, Green had "treated [him] with a certain aloofness," that he had "never felt like [he] was part of her true inner circle of confidants and people that she felt comfortable around," that he had "never enjoyed a close working relationship, a good personal relationship, a business professional relationship with … [her]," that Green's interactions with him were "matter-of-fact meetings," and that "[his] interactions with her 90 percent of the time [we]re interactions that [he] initiated…" (SUMF ¶150.)

Plaintiff testified that upon accepting Green's offer to be Deputy Comptroller, Finance and Development, Green happily told him, "I'm glad you accepted the position, because this will be a

great way for you to round out and complete your career with the City as a Deputy. You'll be able in a couple of years to go out on top as a Deputy." [2] (SUMF ¶ 26.)

Plaintiff testified that in Spring of 2019, he and Beverly Fitzsimmons, a white, 61 year old woman employed as Deputy Comptroller, met with Green, who told them that she was planning to run for another term as the Comptroller and asked them: "Can I count on your support? Will you be here? Will you be there in these positions…" (SUMF ¶¶22, 153.)  Plaintiff claims that this encounter supports his discrimination claim because he interpreted Green's non-verbal reaction to his comments as "she didn't like what she heard[.]" (SUMF ¶153.)

The sum total of Plaintiff's "evidence" falls woefully short of the kinds of egregious conduct that the Eighth Circuit has held to be insufficient to support a constructive discharge claim or create a hostile work environment.  *See, e.g.*, *Woodland v. Joseph T. Ryerson & Son, Inc.,* 302 F.3d 839, 844 (8th Cir. 2002) (holding that racist graffiti, including drawings of "KKK," a swastika, and a hooded figure on the walls of the employer's men's restroom was neither severe nor pervasive enough to create a hostile work environment).

In affirming the dismissal of a claim of constructive discharge where plaintiff resigned in response to an imminent threat of termination, the Eighth Circuit noted that:

> [The] [plaintiff's] allegations, though perhaps describing vile or inappropriate behavior, do not rise to the level of actionable hostile work environment as a matter of law. . . . Sporadic, the [incidents] spanned "a number of years," and were not so intimidating, offensive, or hostile that they poisoned the work environment. "Numerous cases" [ ] have rejected hostile work environment claims "premised

---

[2] Even if Green's happy, congratulatory statements to Plaintiff in May 2016 could somehow be construed as reflecting any discriminatory bias or animus (which they cannot), they are too remote in time.  The Eighth Circuit has long held that stray remarks by supervisors that are remote in time do not support a finding of discrimination.  *See, e.g.*, *Simmons v. Océ-USA, Inc.*, 174 F.3d 913, 916 (8th Cir. 1999) (a white supervisor's use of a racial slur and repetition of a racially offensive joke were insufficient to create a "trialworthy" issue of pretext because the remarks occurred two years earlier, outside of the context of the decision-making process); *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 427–28 (8th Cir. 1999) (remarks made by supervisor two years before termination were insufficient).

upon facts equally or more egregious than the conduct at issue here." [The] [plaintiff] failed to state a claim to relief that is plausible on its face.

*Warmington*, 998 F.3d at 800 (internal citations omitted).

Here, Plaintiff's claimed "evidence" of the alleged intolerable conditions falls well below the category of "commonplace indignities typical of the workplace (such as tepid jokes, teasing or aloofness)" that do not create an objectively hostile work environment, much less render the workplace intolerable for purposes of proving constructive discharge. *Scusa v. Nestle U.S.A. Co.,* 181 F.3d 958, 969 (8th Cir. 1999) (listing cases that suggest "ostracism by co-workers is not an adverse employment action"); *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005). "[S]hunning and other such related conduct has routinely been rejected by courts as sufficiently severe to constitute a hostile work environment." *Clay v. Lafarge North America*, 985 F.Supp.2d 1009, 1030 (S.D. Iowa 2013); *see also Evance v. Trumann Health Servs., LLC,* No. 3:11CV00025, 2012 WL 2282555, at *5 (E.D. Ark. June 18, 2012) ("Plaintiff's allegations of feeling ostracized and not being a part of the 'clique' are insufficient to establish a hostile work environment."); *McGee v. Omaha Pub. Power Dist.,* No. 8:05CV512, 2007 WL 1434896, at *4 (D. Neb. May 14, 2007) (finding a transfer issue and the belief that coworkers ostracized and would not communicate with the plaintiff insufficient to show a hostile work environment claim).

Further, Plaintiff's "evidence" of intolerable working conditions actually consists of nothing more than Plaintiff's own self-serving subjective beliefs, conjecture and surmise. Notably, "a plaintiff's subjective belief or speculation that statements are discriminatory does not establish a claim of hostile work environment" or create an issue of material fact to defeat summary judgment. *Montes v. Greater Twin Cities Youth Symphonies,* 2006 WL 3386560, at *9 (D. Minn. Nov. 22, 2006) (citing *Palesch v. Mo. Comm'n on Human Rights,* 233 F.3d 560, 567–68 (8th Cir. 2000)). "[A] [plaintiff] must substantiate h[is] allegations with more than 'speculation, conjecture,

or fantasy' in order to survive summary judgment." *Marquez v. Bridgestone/Firestone, Inc.*, 353 F.3d 1037, 1038 (8th Cir. 2004).

Thus, Plaintiff has not presented evidence to show that a reasonable person in Plaintiff's situation would find the working conditions so intolerable as to compel him to resign.

## III.   Plaintiff Did Not Give Defendants A Chance To Correct The Alleged Intolerable Conditions Before Resigning, Was Not Forced to Resign, and Suffered No Adverse Employment Action.

In order to successfully pursue a claim for constructive discharge based on intolerable conditions, "[a]n employee must [ ] grant [his] employer a reasonable opportunity to correct the intolerable condition before [ ]he terminates [his] employment." *Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 617 (8th Cir. 2000) (citations omitted).

"If an employee quits without giving h[is] employer a reasonable chance to work out a problem, then []he has not been constructively discharged." *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1247 (8th Cir. 1998); *see also Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763, 769 (8th Cir. 2014) ("An employee has an obligation not to assume the worst and not to jump to the conclusion that the only reasonable option is resignation."); *Angarita v. St. Louis County*, 981 F.2d 1537, 1544 (8th Cir. 1992) ("A resignation is presumed voluntary, unless the employee comes forward with sufficient evidence to establish that the resignation was involuntarily extracted."); *Kramer v. K&S Associates*, 942 F. Supp. 444, 447 (E.D. Mo. 1996) (employee was not constructively discharged when he "quit without pursuing a grievance under" the employer's "available procedures"); *Jett v. Interface Security Systems*, 2019 WL 480020, at *3 (E.D. Mo. Feb. 7. 2019) ("an employee cannot substantiate a claim for constructive discharge if [he] does not give the employer a reasonable chance to rectify the underlying claim.")

16

Notably, Plaintiff testified that he did not have any sense that members of the Civil Service Commission would have discriminated against him in anyway. (SUMF ¶156.) Furthermore, he specifically contemplated that his appeal to the Civil Service Commission could be successful. (SUMF ¶157.) Nonetheless, Plaintiff resigned without giving Defendants an opportunity to correct any of claimed, perceived intolerable conditions and that he made a number of worst case assumptions in doing so.

Plaintiff's testimony suggests that he unreasonably believed that the very action of placing him on forced leave created a hostile work environment and irretrievably rendered his working environment intolerable. Director Frank, though, testified that forced leave is not discipline, in and of itself. (SUMF ¶159.) Further, Plaintiff conceded in his prior oppositional briefing that "placing him on forced leave itself" did not constitute intolerable working conditions, and that no employee has the right not to be investigated.[3] Further, the Court partially granted Green's motion to dismiss to the extent Plaintiff's second amended complaint could be construed as seeking recovery for his being placed on forced administrative leave. *See* Doc. # 60, PageID #282.[4]

Here, it is undisputed that neither the forced leaves nor the pre-termination notice resulted in any adverse employment action. Plaintiff admitted that when Green withdrew the forced leaves, the City restored all of the accrued paid vacation that he used while he was on forced leave, and that the City paid him during the entire forced leave period. (SUMF ¶190.)

---

[3] *See* Doc. # 48, Plaintiff's Memorandum in Opposition, p. 9; *see also Farooq v. New York City Health and Hosp. Corp.*, 2020 WL 5018387, at *4 (S.D. N.Y. Aug. 25, 2020) (dismissing plaintiff's Title VII and Section 1983 claims because "although [plaintiff] was initially suspended without pay, he conceded [ ] [defendant] later restored him [ ] all wages missed during that period.")

[4] The Court's finding that Plaintiff has no viable claim for being placed on forced leave, Doc. # 60, PageID #282, is supported by Director Frank's testimony that employees who successfully challenge such leaves are restored any loss of benefits and permitted to return to work, SUMF ¶¶174-175.

Plaintiff had no legal right not to be investigated by his employer, and investigatory suspensions with pay simply do not constitute adverse employment action. *See, e.g., Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1007–08 (8th Cir. 2012) (suspension with pay while employer investigated employee's absence from work was not an adverse employment action to support an FMLA discrimination claim); *Singletary v. Mo. Dep't of Corrections,* 423 F.3d 886, 891–92 (8th Cir. 2005) (an investigatory suspension with pay is not an adverse employment action under Title VII); *Moisant v. Air Midwest, Inc.,* 291 F.3d 1028, 1031–32 (8th Cir. 2002) (suspension with pay is not an adverse employment action). "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Muldrow v. City of St. Louis*, --F.4th--, 2022 WL 995363, at *3 (8th Cir. 2022).

## IV.   Neither Plaintiff's Subjective Beliefs of Intolerable Conditions, His Claimed Embarrassment Nor The Fear of Discipline Create Intolerable Working Conditions.

Plaintiff's subjective "beliefs" are neither objectively reasonable nor constitute "evidence" of objectively intolerable working conditions.  *See, e.g., Thomas*, 2022 WL 748590, at *3–4 (plaintiff's beliefs that defendant's failure to give her a bonus and to promote her were discriminatory was not evidence so as to create a material issue of fact to defeat defendant's motion for summary judgment); *Yeargans*, 2019 WL 4247837, at *4–6, f.n. 16 ("Plaintiff's belief that he was the victim of discrimination … [ ], without more, is not evidence of race discrimination.")

Furthermore, Plaintiff's own testimony belies his "beliefs" to the extent that he admitted he was aware that he "could have [had] the chance to work in another department, in another area for comparable salary" had he successfully appealed any disciplinary decision to the Civil Service Commission.  (SUMF ¶157.)

Moreover, Plaintiff's claimed embarrassment about being "escorted out by an armed marshal" is an immaterial fact that is legally insufficient to prove constructive discharge. The

Eighth Circuit has found that "frustration and embarrassment ... do not make work conditions sufficiently intolerable as to constitute constructive discharge." *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 498 (8th Cir. 1995) (holding that frustration and embarrassment at not being promoted did not constitute constructive discharge); *Gartman v. Gencorp Inc.,* 120 F.3d 127, 130 (8th Cir. 1997) (requesting an employee to resign or accept a transfer to plant with uncertain future was not objectively intolerable, as required to support constructive discharge claim); *Bozue v. Mut. of Omaha Ins. Co*., 4:19-cv-01656-SRC, 536 F.Supp.3d. 438, 458 (E.D. Mo. 2021) ("Objectively intolerable conditions include circumstances where an employee's supervisor used racial slurs and sometimes directed them at an employee, but not 'frustration and embarrassment…'").

Lastly, the Eighth Circuit has made it clear that a supervisor's actions in telling a subordinate that he will be fired does not, in and of itself, constitute constructive discharge. *See, e.g., Carpenter v. Con-Way Cent Express Inc*., 481 F.3d 611, 617 (8th Cir. 2007) (affirming summary judgment in favor of employer on employee's constructive discharge claim where supervisor told employee, "If you don't like the way things are run around here, leave your keys on my desk."); *Summit v. S-B Power Tool, (Skil Corp.), a Div of Emerson Elec. Co*., 121 F.3d 416, 421 (8th Cir. 1997) ("We hold that an employee's being told that he [ ] will be fired for cause does not, in and of itself, constitute constructive discharge."); *Dodge v. City of Belton*, 2011 WL 529708, at *3 (W.D. Mo. Feb. 4, 2011) ("The prospect of undergoing the City's termination procedures was not an intolerable condition …; [plaintiff] could have taken advantage of these procedures, rather than resigning.")

V.     **Plaintiff's Resignation was Not Objectively Reasonable.**

Here, Plaintiff's resignation was neither objectively reasonable nor a reasonably foreseeable consequence of placing Plaintiff on forced leave, withdrawing forced leave, and

initiating pre-termination procedures.  It is undisputed that Defendants' decisions in this regard were consistent with Regulation 117, and that neither Plaintiff's placement on forced leave nor his receipt of a pre-termination notice necessarily heralded his termination of employment.

Richard Frank, a 61 year old white male (SUMF ¶¶ 97, 124) who served as the City's Director of Personnel at the time of Plaintiff's forced leave (SUMF ¶¶90-91), testified that he personally reviewed and approved of Comptroller Green's requests to place Plaintiff on forced leave. (SUMF ¶¶ 97.) Plaintiff testified he has no basis for concluding that Director Frank discriminated against him based on his race, age or sex. (SUMF ¶¶ 148-149.) The placement of any employee on a forced leave requires the approval of the City's Director of Personnel within 72 hours, and Director Frank properly scrutinized and did not routinely approve forced leave requests unless they were warranted. (SUMF ¶160.)

Director Frank also testified that forced leave is not considered discipline, but instead, is designed to protect the employer and the workplace pending an investigation into allegations of wrongdoing.  (SUMF ¶166.)  Proof of wrongdoing or misconduct is not a necessary prerequisite to placing an employee on forced leave under the City's personnel policies and Administrative Regulation No. 117.  (SUMF ¶166.)  Rather, high level employees with access to sensitive financial information like Plaintiff are placed on forced leave as a means of removing the employee from the workplace while an investigation is being conducted. (SUMF ¶¶ 162, 163, 167.)

Director Frank was personally aware of other situations in which the decision to place an employee on a forced leave was later rescinded and reinstated.  He explained that these situations had occurred "when more information was forthcoming that necessitated … further investigation, (SUMF ¶ 179), and that it is common for appointing authorities to request extensions of time to complete an investigation, (SUMF ¶¶ 172-173).

Placing an employee on forced leave and/or issuing a pre-termination notice does not necessarily result in discipline or termination. (SUMF ¶¶ 168, 169, 174-179.) Moreover, neither the placement of an employee on forced leave nor the issuance of a pre-termination notice constitutes discipline in and of itself. (SUMF ¶¶ 166, 176.)  Rather, a pre-termination notice simply leads to an informal review during which the employee and his representative have the opportunity to review evidence and respond to allegations in the notice. (SUMF ¶¶ 176-179.)

Moreover, in the event of a forced leave or a pre-termination review, City employees, specifically including Plaintiff, have a right of appeal to the Civil Service Commission. (SUMF ¶¶ 164-179.)   Director Frank knew of situations where: (i) forced leaves were appealed, then rescinded, and the employee returned to work; (ii) no discipline issued following a pre-termination review; and (iii) in the context of an appeal of discipline imposed following a pre-termination review, the Civil Service Commission determined that the discipline was improper and returned the employee to work. (SUMF ¶ 179.) In all such situations, the employee is "made whole in terms of any lost pay and seniority, et cetera."  (SUMF ¶¶ 174, 175, 177.)  Consistent with this testimony, Plaintiff admits that the City restored all of the paid vacation time that he used while he was on the forced leave. (SUMF ¶ 131.)

The City maintains policies and procedures under Regulation No. 103, whereby employees may internally report instances of perceived discrimination. However, Plaintiff never availed himself of those remedies to report that he believed he had been discriminated against before he retired, thus depriving himself and Defendants of corrective opportunities. (SUMF ¶188.)

The undisputed fact that Plaintiff never complained to the City that he believed he was a victim of discrimination before retiring is "fatal to his constructive discharge claim."  *Yeargans*, 2019 WL 4247837, at *17; *see also Knowles v. Citicorp Mortgage, Inc.,* 142 F.3d 1082, 1086 (8th

21

Cir. 1998) (affirming summary judgment for employer on constructive discharge claim because employee did not pursue internal grievance procedure); *Coffman,* 141 F.3d at 1247–48 (reversing constructive-discharge judgment in part because employee had avenue of redress within company and failed to use it); *Lisdahl v. Mayo Foundation*, 633 F.3d 712, 719 (8th Cir. 2011) (affirming summary judgment that plaintiff was not constructively discharged where he never filed any grievances or voiced concerns about his supervisor's alleged workplace discriminatory treatment of him); *Williams v. City of Kan. City*, 223 F.3d 749, 754 (8th Cir. 2000) (finding plaintiff did not give defendant an opportunity to address her concerns and that resignation was not plaintiff's only plausible alternative); *Wensel v. State Farm Mut. Auto. Ins. Co*., 218 F.Supp.2d 1047, 1065–66 (N.D. Iowa 2002) (employee's failure to use employer's established means for complaining about perceived discrimination is "compelling evidence" that he, or a reasonable person in his situation, would not have found his working conditions to be intolerable).

## VI. Defendants Had Legitimate, Non-Discriminatory Reasons For Placing Plaintiff On Forced Leave And Issuing Him A Pre-Termination Notice Incident to a Misconduct Investigation.

The undisputed facts show that during the last two weeks of June 2019, Plaintiff: (i) showed a lack of candor with respect to matters he caused to be placed on E&A's agenda on behalf of the Comptroller's Office without first talking with Green and obtaining her approval to do so (SUMF ¶¶54-63); (ii) failed to timely update Green on the status of the Muni Court Project, despite repeated requests by Deputy Comptroller Fitzsimmons that he do so (SUMF ¶¶54-63); (iii) caused important, time sensitive Muni-Court Project documents to be placed in inter-office mail (SUMF ¶¶64-86); and (iv) left for vacation two days before the deadline, thus leaving the Muni-Court Project documents in a state of disarray and chaos, and forcing others in the Comptroller's Office

to correct defects in the documentation and to ensure that it was properly and timely executed and recorded, (SUMF ¶¶64-86).

The undisputed evidence also shows that: a) such important, time sensitive documents are never placed in interoffice mail, b) Plaintiff had a duty to timely apprise Green of developments on the Muni Court Project, and c) although the process of getting documents timely executed worked smoothly before Plaintiff assumed the duties of Deputy Comptroller, Finance and Development, that process broke down after he was promoted to that position. (SUMF ¶¶54-86).

It is also undisputed that in connection with the forced leave, Comptroller Green discovered that Plaintiff had: (i) not properly managed payment on significant outstanding telecommunications bills which resulted, in part, in the City having a record of outstanding owed balances with one vendor of nearly $1.4 million dollars and receiving threats from that vendor of service interruption in its provision of critical services to the City (SUMF ¶¶99-110); (ii) signed multiple illegal contracts purportedly on behalf of the City without authorization contrary to Comptroller Green's repeated directives, the Charter and the Code of Conduct (SUMF ¶¶99-110, 121)[5]; (iii) acted unprofessionally regarding an internal audit of the Gateway Transportation Center (SUMF ¶¶111-113); and (iv) engaged in other misconduct including making false representations to, and withholding critical information from, Comptroller Green and her staff, (SUMF ¶¶48-113.)

St. Louis City Charter Article XXV, Section 9 squarely provides:

> All contracts relating to city affairs shall be in writing, signed and executed in the name of the city. In cases not otherwise provided by law or ordinance, **they shall be made by the comptroller**, and in no case by the board of aldermen or any committee thereof. Contracts not made by the comptroller shall be countersigned

---

[5] Although Plaintiff denied signing his name on a contract with Waste Management, documents and correspondence produced by Waste Management clearly show that Garavaglia received, executed and faxed the contract at issue back to Waste Management. (SUMF ¶¶108-110)

by him, and **all contracts shall be filed and registered by number, date and contents with the register**.  (emphasis added).[6]

Plaintiff's illegal actions in purporting to execute contracts on behalf of the City, along with the other instances of misconduct established by the record, provided ample, legitimate grounds for placing him on forced leave pending further investigation and issuing him a pre-termination notice. (SUMF ¶¶48-113); *see, e.g., Kennedy v. City of St. Louis*, 749 S.W.2d 427, 433 (E.D. Mo., 1988) ("Article XXV, § 9 of the City charter requires all contracts relating to City affairs shall be made by the comptroller in cases not otherwise provided by law or ordinance.").

**V.    Plaintiff Has No Evidence To Show That Defendants' Reasons Were Pretextual.**

A plaintiff may demonstrate a "material question of fact regarding pretext" by showing either "that the employer's explanation is unworthy of credence ... because it has no basis in fact" or by "persuad[ing] the court that a prohibited reason more likely motivated the employer." *Gardner v. Wal-Mart Stores, Inc.*, 2 F.4th 745, 748 (8th Cir. 2021). "[A] plaintiff may not establish pretext simply by showing that the employer's 'honest' belief was erroneous, unwise, or even unfair." *Main*, 959 F.3d at 325.   "[It is not [the] province [of] [the] [court] to decide whether [the employer's] reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Id*. "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions .... Rather, [their] inquiry is limited to whether the employer gave an honest explanation of its behavior." *Gardner*, 2 F.4th at 748.

---

[6] The only exception to this Charter Provision is in Article XV, Section 3 of the Charter which provides: "Any officer or employee in the comptroller's office **may be designated** by him to draw warrants upon the treasury with the same effect as if signed by the comptroller, **such designation to be in writing, in duplicate, filed with the mayor and in the treasury division**."  (emphasis added).  Plaintiff has admitted that no such written designation for him has been issued by the Comptroller.  (SUMF ¶¶33, 135.)

Plaintiff has not presented sufficient evidence to suggest that Defendants' reasons for placing him on forced leave or issuing him a pre-termination notice are unworthy of credence or that any prohibited reason more likely motivated them.  It matters not that Plaintiff disagrees with the wisdom of these decisions or thinks them to be unfair or incorrect. Defendants are entitled to summary judgment as a matter of law based upon the undisputed facts in this record.

## CONCLUSION

For the reasons stated herein, together with Defendants' SUMF, this Court should enter summary judgment in favor of Defendants on all remaining counts of the SAC.

**LEWIS RICE LLC**

By: */s/  Ronald A. Norwood*
Ronald A. Norwood, #33841
Joy D. McMillen, #42822
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101-1311
314.444.7759 (direct)
314.612.7759 (fax)
rnorwood@lewisrice.com
jmcmillen@lewisrice.com
*Attorneys for Defendant Darlene Green*

**SHEENA HAMILTON,
CITY COUNSELOR**

By: *      /s/ Sheena Hamilton*
Sheena Hamilton, #62921
City Counselor
1200 Market Street
St. Louis, MO 63103
(314) 622-3361 Telephone
hamiltons@stlouis-mo.gov
*Attorney for Defendant City of St. Louis*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 22nd day of April, 2022, a true and correct copy of the foregoing was electronically filed and served on all counsel of record properly registered to receive notice via the Court's CM/ECF system.

  /s/     *Ronald A. Norwood*
