SJ Exhibit 7



# The City of St. Louis

DEPARTMENT OF PERSONNEL

1114 MARKET STREET, ROOM 700
ST. LOUIS, MISSOURI 63101-2043

**LYDA KREWSON**
MAYOR

February 25, 2020

Dana M Engelhardt
Supervisory Investigator
St. Louis District Office
Robert A Young Bldg.
1222 Spruce St., Rm. 8.100
St. Louis, MO 63103

**RE: James Garavaglia v. St Louis City/Comptroller's Office
EEOC 560-2020-00205**

Dear Mr.Englehardt:

Respondent denies the allegations of discrimination based on retaliation and disability
with regard to the complaint filed by James Garavaglia on December 20, 2019.

Please accept the enclosed response from the City of St. Louis Comptroller's Office as
our position statement (**Cover letter and Attachments**).

The City of St. Louis employed 6900 employees at the time of the most recent date of
alleged discrimination.

Sylvia M. Donaldson, Manager
City of St. Louis
Department of Personnel
Employee Relations Section
1114 Market Street, Room 700
St. Louis, MO 63101-2043
(314) 622-3563
DonaldsonS@stlouis-mo.gov

Respondent is not going through or contemplating bankruptcy proceedings.

Discrimination in Employment posters are located on bulletin boards in the offices of the
St. Louis City Justice Center.

City of St. Louis Administrative Regulation No. 103, Equal Employment Opportunity
Policy and Complaint Procedure (*see Attachment*), prohibits discrimination on the basis

**SJ Exhibit**

**7**

**Garavaglia
Depo.
Exhibit 3**

GARAVAGLIA 1

of race, color, national origin, ancestry, age (40 and older), disability, religion, sex, sexual orientation, gender identity or expression, marital status or genetic information in connection with terms or conditions of employment covered by this administrative regulation. This policy prohibits retaliation against an employee who files a complaint and employees who report discrimination or who cooperate or participate in an investigation of a complaint of discrimination.

Sincerely,

Sylvia M. Donaldson
Employee Relations Manager

Attachments
cc: Brent Dulle




**DARLENE GREEN**
Comptroller

212 City Hall
(314) 622-3297
FAX 622-4026

## RESPONDENT'S STATEMENT OF POSITION
## IN RESPONSE TO CHARGE OF DISCRIMINATION

The Office of the Comptroller of the City of St. Louis (which Office along with Comptroller Darlene Green are collectively referred to hereinafter as "Respondent") hereby submits its response to the Charge of Discrimination filed by Complainant James Garavaglia against the City of St. Louis. As more fully discussed in the below Statement of Pertinent Facts and Statement of Law Barring Recovery, the EEOC should dismiss Complainant's Charge because it lacks legal merit. Respondent rightfully initiated disciplinary proceedings against Complainant based on his mishandling of documentation (including, but not limited to, failing to obtain the required signatures for certain documents) in a substantial St. Louis City real estate project and his unauthorized signing of various contracts and/or extensions thereof which resulted in various fiscal improprieties.

Rather than exercising his due process rights to participate in a pre-termination hearing scheduled to occur on September 12, 2019, (during which he would have had the opportunity to be represented by his own counsel of choice, to respond to the charges against him and to present any evidence he may have had to rebut them), Complainant tendered his written resignation on August 30, 2019, and then waited approximately 100 days thereafter to file the Charge of Discrimination wherein Complainant claimed, for the first time, that he had been discriminated against on the basis of age, race and sex. Because Complainant voluntarily resigned from his position of employment prior to possibly incurring any loss of title, rank, position, salary and/or benefits and prior to the scheduled Pre-Termination Hearing (wherein Complainant would have also had an opportunity to present mitigating circumstances to challenge the severity of any proposed discipline), Complainant was not aggrieved by any unlawful discriminatory practice, he did not suffer any actionable adverse employment action, and he cannot, therefore, state a claim of discrimination under well-established law.

### I. Statement of Pertinent Facts

As Complainant acknowledges in his Charge of Discrimination, Comptroller Darlene Green personally promoted him to the position of Deputy Comptroller of Finance and Development in June of 2016. As noted below in the Statement of Law Barring Recovery, the fact that Comptroller Green appointed him to this position in the first instance belies any suggestion that she thereafter discriminated against him based on his age, race or sex.



Respondent initially placed Complainant on Forced Administrative Leave with pay on July 2, 2019, because Complainant mishandled the documentation regarding a sizable City of St. Louis real estate project ("Muni Court Project"). In addition to mishandling the Muni Court Project documentation, Complainant attempted to cover up his misdeeds and/or hide the extent of his deficient handling of the Muni Court Project documentation by withholding critical information from Comptroller Green. These deficiencies included, but were not limited to: 1) failing to keep Comptroller Green fully informed about problems that developed with documentation for the Muni Court Project, which would have caused the matter to be prematurely placed on the E&A agenda; 2) failing to timely obtain the requisite tax clearances for the Muni Court Project and failing to make sure that all requisite taxes were paid before attempting to have the matter placed on the E&A agenda for approval, which deficiencies caused further delays in approval of the Muni Court Project by E&A; 3) creating, through these document deficiencies, the need for a second E&A meeting, all while withholding information from the Comptroller regarding the numerous deficiencies in the documentation; 4) withholding critical information from the Comptroller regarding the documentation which required Comptroller Green's signature; 5) misdirecting the delivery of documents for the Muni Court Project, thereby unnecessarily causing delay in the presentation of such documents to Comptroller Green for her required signature and further compounding Complainant's initial mishandling of the documents; 6) failing to obtain the requisite notarized signature of the Mayor on certain documentation, which caused additional delay in the proper approval of the Muni Court Project; 7) falsely communicating to the Office of the Mayor and Office of the President of the St. Louis City Board of Aldermen that Comptroller Green did not want to proceed with the Muni Court Project when in fact she was in favor of the Project; and 8) taking a personal vacation and simultaneously leaving the Muni Court Project documentation in disarray, which necessarily required others on Respondent's staff to scramble in order to cure all of the deficiencies in the documentation in time to meet the applicable deadline.

Complainant's improper actions in this regard violated various provisions of the City of St. Louis Department of Personnel, Administrative and Joint Regulations (attached hereto as Exhibit 1) and also violated the City's Employee Code of Conduct ("Code of Conduct") (attached hereto as Exhibit 2) which required Complainant, *inter alia*, to:

- "[E]fficiently and effectively direct the activities of [his subordinates]".

- "[D]isplay appropriate/respectful behavior and follow the directions given by Management".

GARAVAGLIA 4

- "[A]ct with honor, faithfulness, loyalty, fairness and due diligence in conducting [his] job duties".

- "[C]omply with all applicable laws and regulations".

- Set "an example of competence and appropriate ethical behavior".

- Maintain "a workplace environment that encourages open communication, free of the fear of reprisal, in the belief that respectful honesty is the surest way to identify problem areas, address them fairly, and resolve them".

- Meet "acceptable standards of performance".

- Ensure "that [his] own actions are not illegal, unethical, or in violation of the rules and regulations of the City of St. Louis".

- Protect the City's "revenue, property, information and other assets from any attempt, either by members of the public, contractors, vendors, agents or its own employees to gain, by deceit, financial or other benefits at the expense of City taxpayers".

- Perform his "duties conscientiously, honestly, and in accordance with the best interest of the public".

- "[D]ocument every aspect of the transaction fully and completely".

- Make sure that the City's books and records "reflect in an accurate and timely manner all transactions".

- "[N]ot make any misleading representation or falsify any record or engage in false communication of any kind, whether internal or external, including but not limited to making or filing any false expense, attendance, production, financial, or similar reports and statement".

- Be "completely honest in [his] dealings with the public, elected officials, appointing authorities, supervisors and fellow employees. Lying in any form, omitting some facts or exaggeration undermines the fundamental trust that must exist between employer and employee, and has no place in public service".

Based on the failures and deficiencies in Complainant's job performance, Respondent placed Complainant on administrative leave **with pay** on July 2, 2019. While Complainant was placed on administrative leave, Respondent conducted an investigation which uncovered various other fiscal improprieties

3

that included evidence demonstrating that: 1) Complainant improperly signed multiple City contracts and contract extensions without first obtaining any legal authorization from the Comptroller or the City to do so (which improper contracts date back to 2009 and exposed the City to potential liability); 2) Complainant failed to properly perform his duties by researching and properly rectifying issues that caused multiple telecommunication invoices directed to the City to remain past due and unpaid for 18 months or more and failed to bring these issues to the attention of the Comptroller; and 3) Complainant impeded an internal audit of the Transportation Center without justification and failed to advise the Comptroller of this fact. Moreover, the City of St. Louis is currently under audit by the State Auditor, which State Auditor is also looking into the foregoing irregularities caused by Complainant's acts and omissions.

Based on the advice of counsel, the Comptroller rescinded Complainant's original administrative leave on July 18, 2019, and reinstituted a second administrative leave process that same day, which included the additional, new information as to Complainant's fiscal irregularities ascertained as part of the internal audit process. Ultimately, after consulting with counsel, the Comptroller decided to forego the administrative leave process in favor of a Pre-Termination Hearing Process that the Comptroller initiated by written letter on August 28, 2019. (*See* August 28, 2019 Letter attached hereto as Exhibit 3). A Pre-Termination Hearing was scheduled for September 12, 2019, wherein Complainant, following the presentation of the above-referenced evidence by Respondent, would have had an opportunity to present evidence and argument to refute the charges and evidence presented by the Comptroller's Office. However, prior to the September 12, 2019 Pre-Termination Hearing, Complainant resigned from his position of employment effective August 30, 2019. Because the administrative leaves were rescinded and Complainant resigned prior to any Pre-Termination Hearing, Complainant did not incur any loss of rank, title, position, pay, and/or benefits, and Complainant did not suffer any actionable adverse employment action.

Although Complainant claims that the Comptroller favored younger, African American women over white men, such a claim is belied by the fact that: (i) Complainant's predecessor was an African American female who died while serving in the position of Deputy Comptroller; and (i) consistent with her desire to promote from within, the Comptroller promoted Complainant (a white, 64 year old man) as opposed to any younger, African American woman. In addition, within the last five years, the Comptroller has terminated African American female employees, including a staff attorney, based on deficiencies in their respective job performance.

Complainant suggests that purported statements made to him by the Comptroller regarding the position being good for his pension and retiring on top

4

after a few years somehow illustrates that the Comptroller was planning to force him to retire a few years after she decided to hire him. Not only are such stray remarks legally insufficient to support any inference of age discrimination[1], but Complainant's argument is illogical given that the Comptroller was not compelled to promote him. Moreover, Complainant has misconstrued, misstated and/or misrepresented certain statements that the Comptroller made over three years ago to Complainant and another Deputy Comptroller, who is a white female, which she made in the context of a group discussion with both of them about the Comptroller being up for re-election in a couple of years and that if the Comptroller were unsuccessful in her re-election campaign, she could not assure Complainant or any the other white, female Deputy Comptroller that a newly elected Comptroller would retain either or both of them in their respective positions.

## II.    Statement of Law Barring Recovery

### A. Complainant Cannot Show Adverse Employment Action, And, Thus, Has No Claim for Discrimination

Complainant did not suffer any adverse employment action as a result of being placed on Administrative Leave because such leave was rescinded and withdrawn without any loss of pay, benefits or status. Complainant thereafter chose to resign from his employment with Respondent on August 30, 2019, rather than face the prospect of undergoing Respondent's termination procedures and take advantage of those internal procedures afforded him.

Notably, "adverse employment action" is a necessary factor to proving a prima facie case for discrimination based on race, sex and/or age. "Any claim of discrimination or retaliation under Title VII first requires a plaintiff to identify an adverse employment action." *Tallevast v. City of St. Louis*, 2020 WL 42821, at *2 (E.D. Mo. Jan. 3, 2020). Like the Complainant, the plaintiff in *Tallevast* was a Caucasian employee of the City of St. Louis who alleged race discrimination and further claimed he was constructively discharged, i.e. forced to resign. In dismissing plaintiff's Title VII discrimination claims, the court ruled that plaintiff could not meet the "substantial burden" of proving that he was compelled to resign from his employment with the City of St. Louis' Park Rangers Division where his "own allegations demonstrate that he did not give his employer sufficient opportunity to address the issue, having resigned just one business

---

[1] "'[S]tray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself' will not suffice." *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426-427 (8th Cir. 1999) (holding that statements made by plaintiff's supervisor two years before plaintiff's employment was terminated as part of a reduction in force was "not explicit evidence of age discrimination.").

day" after reporting that several African American co-workers had directed profanity laced and racially hostile remarks at him. *Id.*, 2020 WL 42821, at *3.

Here, Complainant admits in his own allegations that although the Comptroller initially placed him on administrative leave on July 2, 2019, the Comptroller later withdrew and rescinded that administrative leave and reinstated Complainant without any loss in salary, benefits or status.[2] Complainant further admits when the Comptroller notified him by written letter dated August 28, 2019 (Exhibit 3), that a "pre-termination hearing ha[d] been scheduled for Thursday, September 12, 2019," his response was to resign from his employment on August 30, 2019, less than two (2) calendar days after he received notice of the pre-termination hearing. Rather than taking advantage of Respondent's pre-termination hearing procedures which afforded him the opportunity to respond to the City's notice of charges and present any evidence that he may have had to rebut those charges, Complainant simply quit.

Accordingly, no adverse employment action arose from the placement of Complainant on forced administrative leave during this period of time. *See, e.g.*, *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 891–92 (8th Cir. 2005) (holding that investigatory suspension with pay was not adverse employment action); *Moisant v. Air Midwest, Inc.*, 291 F.3d 1028, 1031–32 (8th Cir. 2002) (holding that suspension with pay was not adverse employment action); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (holding that "a suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action"); *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (holding a police officer suffered no adverse employment action where he was temporarily placed on paid administrative leave); and *Jackson v. City of Columbus*, 194 F.3d 737, 752 (6th Cir.1999) (holding that police chief's suspension with pay was not an adverse employment action).

Moreover, neither Respondent's actions in giving Complainant notice of a pre-termination hearing nor Complainant's decision to resign after receiving

---

[2] Any complaint that Complainant may have had about Respondent's alleged "delay" in scheduling the pre-termination hearing is without any legal consequence. "Not everything that makes an employee unhappy is actionable adverse employment action... an adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits or responsibilities." *Watson v. Wilkie*, 2019 WL 3358560, at *5 (W.D. Mo. July 24, 2019) (entering judgment in favor of employer on an African-American employee's claims of race discrimination and constructive discharge claim where she resigned after her supervisor issued a counseling memorandum to her and made other verbal remarks about her to several senior level managers and a union representative).

such notice constitute an adverse employment action. *See Dodge v. City of Belton, Missouri*, 2011 WL 529708, at *1-3 (W.D. Mo. Feb. 4, 2011) (holding that "[Employer] did not create intolerable working conditions by notifying [employee] of [employer's] intention to terminate [employee's] employment or by notifying him that a pre-termination hearing would be scheduled.").

Similar to Complainant, the employee in *Dodge*, who was white, resigned after receiving a pre-termination hearing notice and later claimed that he was constructively discharged based upon his race. In entering summary judgment in favor of the employer on employee's employment discrimination claims, the federal district court observed in pertinent part:

> Dodge cannot establish he suffered an adverse employment action. 'An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. [Citation omitted.] Dodge contends he suffered an adverse employment action because he was told to resign or be terminated, he was suspended, and he was accused of violating Police Department and City personnel policies.

> Since he resigned and was not formally terminated, the only way Dodge can establish an adverse employment action through the loss of his job is by showing that the City constructively discharged him. 'To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit.' [Citation omitted.]

> 'A constructive discharge arises only when a reasonable person would find the conditions of employment intolerable.' [Citation omitted.]...And '[a] plaintiff must take affirmative steps short of resigning that a reasonable employee would take to make her conditions of employment more tolerable.' [Citation omitted.]

> Chief Person did not create intolerable working conditions by notifying Dodge of his intention to terminate Dodge's employment or by notifying him that a pre-termination hearing would be scheduled...

> The prospect of undergoing the City's termination procedures was not an intolerable condition of employment; Dodge could have taken advantage of these procedures, rather than resigning...

> Moreover, the Eighth Circuit has held that 'an employee's being told that he or she will be fired for cause does not, in and of itself, constitute constructive discharge.' [Citation omitted.] Thus, the fact

7

Dodge was notified he would be terminated for failing to report his arrest for DWI does not, in and of itself, constitute constructive discharge.

Nor does Dodge's suspension with pay constitute an adverse employment action. Dodge provides no argument how his suspension with pay produced a material employment disadvantage, and Eighth Circuit law would not support such a conclusion. [Citations omitted.] Although Dodge was no longer employed after his suspension, this is because he voluntarily resigned, not because the City constructively discharged him.

In arguing he suffered an adverse employment action, Dodge also notes that he was accused of violating various Police Department employee conduct provisions and the City ... personnel code. However, Dodge does not identify any immediate consequences of the accusations themselves. Dodge has not persuaded the Court that merely being accused of violations constitutes a material adverse change in employment.

*Dodge*, 2011 WL 529708, at * 2-3. *See also Tuttle v. Dobbs Tire & Auto Centers, Inc.*, 590 S.W.3d 307, 310-311 (Mo. *banc* 2019) ("This Court has recognized that, for the MHRA's purposes, an alleged discriminatory act 'must have had some adverse impact on the plaintiff before it becomes actionable.' ... Tuttle was not aggrieved until the alleged discriminatory practice resulted in an adverse impact...").

Like *Dodge*, Complainant cannot show that his resignation from employment in lieu of facing "the prospect of undergoing" Respondent's "termination procedures" constituted constructive discharge as a matter of law. *Id*, 2011 WL 529708, at *3. The fact that Complainant could have participated in the pre-termination hearing but chose not to do so, eviscerates his claim of constructive discharge.

Federal courts have consistently held that where an employee chooses "to resign despite having a viable pre-termination hearing process," he cannot prove constructive discharge as a matter of law. *Green v. East Haven Police Dep't*, 2017 WL 6498144, at *8 (D. Conn. Dec. 19, 2017). *See also Tallevast*, 2020 WL 42821, at *1-3 (dismissing employee's race discrimination claims because he resigned from his employment with the City of St. Louis without giving the City a "sufficient opportunity to address the issue"); *Dodge*, 2011 WL 529708, at *1-3 (employee could not show constructive discharge when he resigned in lieu of participating in a pre-termination hearing); *Kramer v. K&S Associates*, 942 F.Supp. 444, 447 (E.D. Mo. 1996) (employee was not constructively discharged when he "quit without pursuing a grievance under" the employer's "available

8

procedures"); *Angarita v. St. Louis County*, 981 F.2d 1537, 1544 (8th Cir. 1992) ("[a] resignation is presumed voluntary, unless the employee comes forward with sufficient evidence to establish that the resignation was involuntarily extracted."); *Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763, 769 (8th Cir. 2014) ("An employee has an obligation not to assume the worst and not to jump to the conclusion that the only reasonable option is resignation."). *See also Cosby v. Steak N Shake*, 804 F.3d 1242, 1246 (8th Cir. 2015) ("the fact that an employee is disciplined in accordance with an employment policy is not enough to prove a constructive discharge claim"); *Watson v. Heartland Laboratories, Inc.*, 790 F.3d 856, 863 (8th Cir. 2015) (reasonableness entails that an employee not jump to conclusions too quickly and not assume the worst); *Jett v. Interface Security Systems*, 2019 WL 480020, at *3 (E.D. Mo. Feb. 7, 2019) ("an employee cannot substantiate a claim for constructive discharge if the employee does not give the employer a reasonable chance to rectify the underlying claim.").

A viable, pre-termination hearing process and appeal procedure existed under Respondent's written policies, and Complainant cannot show why his choice to resign rather than take advantage of and participate in this hearing process and appeal procedure was anything other than a voluntary decision on his part. Not only did Respondent's Discipline Policy (a copy of which is attached hereto and incorporated herein as Exhibit 1) provide, in relevant part, that "[a] pre-termination review is required prior to the imposition of a dismissal of a permanent employee[,]" but it also assured Complainant that someone other than Comptroller Green would make the decision about whether or not to terminate his employment, and that such decision would be subject to further review and an appeal process before the Civil Service Commission. Respondent's Discipline Policy clearly states that "[t]he appointing authority shall make a determination regarding the employee's employment status within fourteen (14) calendar days from the pre-termination review." At all times relevant to the charge allegations, Judy Armstrong was the Appointing Authority, and she was identified as such in the August 28, 2019 correspondence to Complainant. (*See* Exhibit 3). In addition, Respondent's Discipline Policy assured Complainant of the right to appeal to Civil Service Commission any dismissal decision that Ms. Armstrong may have had made following the pre-termination review hearing. (*See* Exhibit 1).

However, rather than availing himself of the due process afforded to him in a pre-termination hearing and/or appealing any adverse decision in accordance with Respondent's Discipline Policy, Complainant chose to promptly resign. Under these circumstances, Complainant cannot show constructive discharge as a matter of law under the afore-stated precedent. Because Complainant cannot show that Respondent took any adverse employment action against him, Complainant's charge of discrimination is without merit.

9

GARAVAGLIA 11

**B. The Same Actor Inference Applies Which Likewise Establishes That No Discrimination Occurred**

Even if Complainant could show adverse employment action (which he cannot), the fact that Complainant's own charge allegations demonstrate that Respondent's Comptroller, an African-American female, was the person who appointed Complainant to the Deputy Comptroller position in 2016 when Complainant was 64 years old, and that she was also the same person who allegedly discriminated against Complainant approximately three years later on the basis of his sex, race and age runs counter to any reasonable inference of discrimination as a matter of law. To the contrary, these facts (which Complainant's charging documents readily admit) create a presumption that no discrimination occurred.

"[T]hat the same decision-maker was responsible for" Complainant's appointment, the placement of Complainant on forced administrative leave and issuing Complainant a notice of pre-termination hearing "run[s] counter to any reasonable inference of discrimination." *Kramer v. K& S Associates*, 942 F.Supp. 444, 448 (E.D. Mo. 1996) citing *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1337 (8th Cir. 1996). *See also Kelleher v. Aerospace Community Credit Union*, 1996 WL 498107, at *8 (E.D. Mo. July 2, 1996) ("Ms. Pilger hired Plaintiff in 1986, at the age of 46. Ms. Pilger also promoted Plaintiff in 1992, at the age of 52, and terminated him in 1994, at the age of 54. Given that Ms. Pilger made all three decisions, and that Plaintiff was a member of a protected class from the very first day he was hired, the Court finds that Plaintiff has failed to establish an inference of age discrimination.").

Rather, such facts give rise to a strong inference that discrimination did not occur. "Where the hiring and firing decision maker is the same person, a 'same actor inference' applies." *Kirklin v. Joshen Paper & Packaging of Arkansas Co.*, 2017 WL 1179969, at * (E.D. Ark. Mar. 29, 2017). "The Eighth Circuit Court of Appeals gives the same actor inference significant weight." *Id.*, citing *Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173, 174-175 (8th Cir. 1992) (same-actor inference merited summary judgment for defendant). *See also Arraleh v. County of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006) (strong inference that no discrimination occurred exists when same actor hires and fires employee).

"This inference arises because it is unlikely that the same supervisor would hire a [person of a protected class], only to turn around and discharge [him] for that reason." *Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362-363 (8th Cir. 1997). "An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class." *Adkins v. University of the Ozarks*, 262 F.Supp.3d 791, 803 (W.D. Ark. 2017). "In the age discrimination context, the Eighth Circuit Court of Appeals has said

GARAVAGLIA 12

'it is unlikely a supervisor would hire an older employee then discriminate on the basis of age, and such evidence creates a presumption against discrimination." *Id.*

Accordingly, because the same actor inference applies so as to raise a presumption that no discrimination occurred here as a result of Complainant's charge admissions that the same decision-maker, i.e., Comptroller Green, was responsible for appointing Complainant to the Deputy Comptroller position and then later placing him on forced administrative leave and issuing a pre-termination hearing notice to him, Complainant's administrative charge of discrimination should be dismissed.

Sincerely,

Darlene Green
Comptroller, City of St. Louis

Kelley Anderson, Esq.
Special Assistant to
the Comptroller

GARAVAGLIA 13

# EXHIBIT 1

GARAVAGLIA 14

*City of St. Louis Department of Personnel Administrative Regulation NO. 117*

# Discipline Policy
Revised and reissued: December 14, 2012

All employees are expected to conduct themselves in accordance with department/ division policies, Administrative Regulations of the Department of Personnel, Civil Service Rules and Regulations, Ordinances, the Charter of the City of St. Louis, and generally acceptable work behaviors including the City's Employee Code of Conduct. Employees in supervisory positions should set an example by their own conduct, work habits, and commitment to the City Service.

Any employee who is arrested, charged, indicted and/or convicted of any criminal charge that occurs on or off duty, whether engaged in City business or not, is required to report the arrest, charge, indictment or conviction to his/her appointing authority within five (5) calendar days of the arrest, charge, indictment or conviction. Any employee who fails to comply with this requirement will be subject to disciplinary action up to and including dismissal.

Disciplinary actions shall be considered as constructive interventions for the purpose of correcting inappropriate work behavior. In order to maintain an effective and efficient workforce, appointing authorities, managers and supervisors are obligated to identify any behaviors or actions that prevent an employee from properly performing his or her duties and inform the employee of the behavior and the necessary action required to correct the problem. Failure by the employee to correct the problem shall result in disciplinary action.

Disciplinary actions shall be administered on a uniform basis by an appointing authority or his/her designee and should normally be expected to be progressive in nature; failure to adhere to this policy could result in disapproval of such action. The Department of Personnel shall review all proposed discipline to ensure that said proposed discipline is appropriate and progressive in nature, excluding those instances that warrant an exception to progressive discipline. Progressive discipline places an employee on notice that his or her actions will not be tolerated and, if continued, will result in more serious discipline up to and including dismissal. Each offense must be judged on a case-by-case basis and consideration given to the employee's entire work history when determining the appropriate action to take. Some offenses may be so severe that immediate suspension, reduction in pay, disciplinary demotion or dismissal is warranted.



Exhibit 1
GARAVAGLIA 15

Disciplinary actions include:

A. Written reprimand;

B. Suspension (up to 28 calendar days in a 12 month period);

C. Temporary reduction in pay for a period not to exceed 13 bi-weekly pay periods;

D. Disciplinary demotion (to a vacant position in lower pay grade for which the employee is qualified within the division/department);

E. Dismissal

## I. PRE-DISCIPLINARY REVIEW

A pre-disciplinary notice and review is required prior to the imposition of any disciplinary action of a permanent employee. The pre-disciplinary review is an informal procedure in which the appointing authority or his or her designee advises the employee of the charges against him or her, gives an explanation of the charges and evidence, and allows the employee an opportunity to present facts prior to any disciplinary action being taken. This review is not a formal hearing, nor is it an extended procedure at which the employee is afforded the right to present witnesses, cross-examine individuals, etc.

The written notice shall be hand-delivered to the employee or sent by certified mail. The notice should include the following: 1. disciplinary action is being considered; 2. the specific charges including pertinent dates; 3. the rules and/or regulations violated; 4. the place, date and time of review; 5. that the employee has a right to a representative; 6. that the employee's prior work record is being considered; and 7. that failure to appear shall waive the employee's right to a disciplinary review. Typically two (2) to three (3) working days (excluding weekends) should suffice although other time frames may be agreed upon by the parties. If the employee chooses to have a representative at said hearing, every effort should be made to schedule the pre-disciplinary review so that a representative can attend and represent the employee.

During the pre-disciplinary review the following should occur: state purpose of review; advise employee of charges; give the employee and/or his/her representative the opportunity to review the evidence; give

the employee and/or his/her representative the opportunity to respond to the charges.

If the employee is disciplined, the following statement should be included on the disciplinary form: The employee has been advised of the charges against him/her, has been given an explanation of the charges and evidence, and given an opportunity to present disputed facts or mitigating circumstances. The employee has also been advised of his/her right to have an employee representative present. If an employee fails to appear for his/her pre-disciplinary review, it should be so noted on the Employee Status Form, Change in Employee Status form or the Written Reprimand form.

Failure to provide a permanent employee with written notice of the employee's
opportunity for a pre-disciplinary review shall result in the disciplinary action being disapproved by the Director of Personnel.

The appointing authority shall make a determination regarding the employee's discipline and notify the employee of the decision in writing within (14) fourteen calendar days from the date of review.

## II. WRITTEN REPRIMANDS

The Written Reprimand form must be completed in its entirety with clear and concise
statements. The "Reason For Reprimand" should be clearly documented by the appointing authority specifying any work rule or regulation violated.

The appointing authority's approval/disapproval of the reprimand and date must be
completed, as well as the date given to employee.

The written reprimand is next forwarded to the Department of Personnel for review and approval by the Director of Personnel, and then placed in the employee's official file. A copy of the form is to be given to the employee and the method and date of such notification shall be included in the proper section of the written reprimand form. Also, if it is not received by the Department of Personnel within sixty (60) days from the date of the last event which caused the written reprimand, unless otherwise authorized by the Director of Personnel, it will not be

considered to be an official written reprimand for purposes of prior work history.

A permanent employee may request a review of a written reprimand by the Civil Service Commission within ten (10) calendar days of the date the copy of the reprimand is given to the employee as noted on the written reprimand.

## III. SUSPENSIONS

The appointing authority shall complete a Change In Employee Status form (PD-202-A), which should clearly document the reasons for the suspension, including any violation of a work rule or City regulation, and also the duration of the suspension. The duration should include the time and date the suspension starts and the time and date it ends. The form should also include the employee's days off. The offense committed by the employee and the employee's prior work history shall be considered in determining the length of the suspension. However, suspensions shall not total more than twenty-eight (28) calendar days in a twelve (12) month period. The employee shall also be informed of his/her right to have a representative present at the pre-disciplinary review, and if the employee chooses to exercise this right, every effort shall be made to schedule the pre-disciplinary review so that a representative can attend and represent the employee.

NOTE: Employees who are exempt from overtime provisions (overtime code 1) may be suspended for one or more full days for serious workplace misconduct in violation of a rule applicable to all employees of the City (e.g., sexual harassment, workplace violence, drug and/or alcohol usage, or any violation of state and/or federal law). For other violations exempt employees must be suspended for one or more full work weeks.

The original form is forwarded to the Department of Personnel for review and approval by the Director of Personnel and shall then be placed in the employee's official file. A copy of the form is to be given to the employee and the method and date of such notification shall be included in the proper section of the Change In Employee Status form.

A permanent employee may appeal a suspension to the Civil Service Commission within ten (10) calendar days of the date of Notice to Employee reflected on the Change In Employee Status Form.

## IV. TEMPORARY REDUCTION IN PAY

A disciplinary temporary reduction in pay may only be imposed upon non-exempt employees (Overtime code 3 and 4). The reduction in pay may not be greater than fifteen percent (15%) of the employee's current rate of pay. The length of the reduction may not exceed thirteen (13) pay periods. The employee shall also be informed of his or her right to have a representative present at the pre-disciplinary review, and, if the employee chooses to exercise this right, every effort shall be made to schedule the pre-disciplinary review so that a representative can attend and represent the employee.

The Employee Status Form (PD-COMP-1) shall be forwarded to the Department of Personnel for the Director of Personnel's review and approval and shall then be placed in the employee's official file. A copy of the form shall be given to the employee and the method and date of such notification shall be included in the proper section of the Employee Status Form.

A permanent employee may appeal a temporary reduction in pay to the Civil Service Commission within ten (10) calendar days of the date of the date of notice to Employee as reflected on the Employee Status Form.

## V. DISCIPLINARY DEMOTIONS

An appointing authority may impose a disciplinary demotion to a vacant position in a lower pay grade for which the employee is qualified within the division/department. The employee shall also be informed of his or her right to have a representative present at the pre-disciplinary review, and, if the employee chooses to exercise this right, every effort shall be made to schedule the pre-disciplinary review so that a representative can attend and represent the employee.

An Employee Status Form (PD-COMP-1) must be completed and should clearly document the reasons for the demotion, including any violation of a work rule or City regulation. A copy of the form shall be provided to the employee and verification of notification shall be included in the section of the form entitled "Method and date of notification of employee."

The Employee Status Form shall be forwarded to the Department of Personnel for the Director of Personnel's review and approval and shall then be placed in the employee's official file.

A permanent employee may appeal a disciplinary demotion to the Civil Service Commission within ten (10) calendar days of the date of notice to Employee as reflected on the Employee Status Form. (as indicated under method and date of notice to employee).

## VI. FORCED LEAVE

Circumstances may necessitate relieving an employee from duty and thus placing such employee on forced leave pending an investigation and/or a pre-termination review. (Generally, forced leave is appropriate when the employee poses a threat to himself/herself, other employees or the worksite.) In such cases, the appointing authority must notify the Director of Personnel or his designee in writing of his/her desire to place the employee on forced leave and the reason therefore and obtain the Director of Personnel's or his designee's approval within three (3) calendar days or 72 hours. The employee shall be notified in writing by the appointing authority that he/she is being placed on forced leave. The employee may elect to be placed on either vacation or compensatory time, if any. If the employee has no such accrued leave, he/she shall be docked. If circumstances necessitate forced leave beyond thirty (30) calendar days, the appointing authority must request, in writing. the approval of the Director of Personnel prior to the initial force leave expiring, an extension of the forced leave and state the reason for the requested extension. The Director of Personnel or his designee may approve or disapprove a request for extension of the forced leave.

If forced leave is disapproved by the Director of Personnel or his designee, the employee shall be returned to work immediately. If the employee has been docked while on forced leave, the employee shall receive pay for the period of the forced leave which resulted in a dock. If the employee has been on vacation leave or compensatory time such leave shall not be restored because the employee elected to take their time rather than be docked.

A permanent employee may appeal the decision of the appointing authority to place the employee on forced leave to the Civil Service Commission within ten (10) calendar days of the date the employee is notified of the forced leave.

If it is found that a less severe form of discipline (other than dismissal) such as suspension is warranted and the employee has been on forced leave, the suspension shall commence on the effective date of the forced leave and if the employee has been on vacation leave, the vacation leave will not be restored. If the length of the suspension is less than the time of forced leave, the employee shall be compensated for the remaining period of time. If a temporary reduction in pay or demotion is deemed appropriate, the employee shall be returned to duty immediately, receive pay for the period of the forced leave which might have resulted in a dock and if the employee has been on vacation leave or compensatory time, such leave shall not be restored.

## VII. PRE-TERMINATION WRITTEN NOTICE AND REVIEW

When corrective discipline has failed to correct the employee's actions or the employee
commits an act(s) which is (are) so serious that corrective discipline is inappropriate, dismissal from the City Service shall be considered. The Department of Personnel and/or the City
Counselor's Office should be consulted prior to dismissing an employee.

The following steps must be adhered to when dismissing an employee for cause from the City Service:

### A. Pre-termination Written Notice

A pre-termination review is required prior to the imposition of a dismissal of a permanent employee. The pre-termination review is an informal procedure in which the appointing authority or his/her designee advises the employee of the charges against him/her, gives an explanation of the charges and evidence, allows the employee and/or his/her representative an opportunity to review the evidence, and then allows the employee and/or his/her representative an opportunity to present facts to mitigate the proposed penalty. This review is not a formal hearing. nor is it an extended procedure at which the employee is afforded the right to present witnesses, cross-examine individuals, etc. The employee shall also be informed of his/her right to have a representative present and, if the employee chooses to exercise the right, every effort should be made to schedule the pre-termination

review so that a representative can attend and represent the employee.

Failure to provide a permanent employee with written notice of the employee's opportunity for a pre-termination review shall result in the dismissal being disapproved by the Director of Personnel.

The written notice shall be hand-delivered to the employee or sent by certified mail and include the following:

- That dismissal is being considered;
- The specific charges/reasons;
- The place, date and time of review;
- The right to have a representative;
- If the employee's prior work record is being considered;
- Failure of the employee to appear shall waive the employee's right to a pre-termination review.

B. Pre-termination Review

The pre-termination review should be conducted before the employee's last day at work
or within thirty (30) days of being placed on forced leave (see below), unless the forced leave has been extended with the approval of the Director of Personnel. The appointing authority should provide employees with sufficient notice to obtain representation if so requested or otherwise prepare for the pre-termination review. Typically three (3) to five (5) working days (excluding weekends) should suffice although other time frames may be agreed upon by the parties. The following should occur:

- State purpose of review (to consider employee's dismissal);
- Advise employee of charges;
- Allow the employee and/or his/her representative an opportunity to review the evidence;
- Give the employee the opportunity to verbally respond to the charges, present mitigating

circumstances and submit any written witness statements;

- Maintain record of review, list of those present, the date, the proceedings, and any relevant facts presented.

The appointing authority shall make a determination regarding the employee's employment status within fourteen (14) calendar days from the pre-termination review and notify the employee of the decision in writing within (14) fourteen calendar days from the date of review. This decision may be: (1) no disciplinary action is required; (2) dismissal is too severe, but a lesser form of disciplinary action is required; or (3) dismissal is warranted.

## VIII. DISMISSAL

If the decision is made to dismiss the employee, an Employee Status Form (PD-COMPT-l) shall be completed and submitted to the Department of Personnel. The form must contain the following:

- The reason(s) for the dismissal with the specific charges/reasons including a summary of prior disciplinary actions, including dates of the actions;
- The date of the pre-termination review;
- The statement "The employee has been advised of the charges against him or her; advised of the right to have a representative present; given an explanation of the charges and evidence, and given an opportunity to fully respond to the charges and evidence at the pre-termination review;" or the statement "The employee failed to appear for the pre-termination review."
- A copy of the letter advising the employee of the pre-termination review should be attached to the Employee Status Form;
- A copy of the completed Employee Status Form shall be either hand-delivered to the employee or sent by certified mail to the employee's address of record.

The original form and two copies are forwarded to the Department of Personnel to be reviewed and approved by the Director of Personnel and placed in the employee's official file. The employee should also receive a copy of the Employee Status Form and the method and date of such notification shall be included in the proper section of the form.

The City of St. Louis has the right to take any and all appropriate disciplinary action up to and including dismissal based upon the circumstances of improper conduct either on the job or off the job. Appointing authorities are encouraged to obtain assistance from the Department of Personnel and/or the City Counselor's Office relative to unique or unusual incidents.

A permanent employee may appeal the dismissal to the Civil Service Commission within ten (10) calendar days of the effective date of the letter sent by action by the Director of Personnel. If the employee does not appeal the dismissal to the Civil Service Commission in a timely manner, the dismissal shall be considered final.

Exceptions to Progressive Discipline

There are some actions which are so serious that progressive discipline is inappropriate or insufficient and, therefore, immediate dismissal is warranted. Listed below are some examples of actions which may be exceptions to progressive discipline. These examples are not intended to be all inclusive:

- The commission of any act while on duty or off duty which would be a violation of Federal, State or local law, other than minor traffic violations. This does not mean that a conviction or even an arrest need have occurred for such a violation;
- Physical abuse of citizens, patients, clients, visitors, supervisors, or fellow employees; or any other violation of the City's Policy on Workplace Violence;

- Unauthorized possession of a firearm or other dangerous weapon (e.g. brass knuckles, knives, blackjacks, incendiary/explosive devices, etc.) or any object or poisonous substance that is readily capable of lethal use while on duty or on the work premises (see Administrative Regulation No. 142);
- Violation of the Policy Against Harassment or the Equal Employment Opportunity Policy and Complaint Procedure.
- Possession of alcoholic beverages while on duty or on the premises without proper permission;
- Illegal possession or sale of a controlled substance or illegal drug while on duty or off duty;
- Inability to perform duties in a safe and normal manner due to the use of alcohol, illegal drugs, abuse of legal drugs or other intoxicants;
- Use of a controlled substance or illegal drug on or off duty;
- Refusal to submit to scientific tests to determine the presence and/or amount of alcohol, drugs or other intoxicants in the body when such test has been authorized by an administrative regulation issued by the Director of Personnel or refusal to release the results of drug/alcohol screens under this provision;
- Unauthorized removal of City property;
- Refusal to submit to a physiological, psychological truth deception test (polygraph) or any voice stress analyzer, psychological stress evaluator when such test has been authorized by the Director of Personnel; or to otherwise refuse to cooperate in a lawful investigation;
- Failure to obtain or maintain a license, registration, certification or any other credential required as a condition of employment;
- Violation of the requirements of the City Charter relating to residence within the City of St. Louis, except as provided for by State Law.
- Failure to successfully complete the Mandatory Improvement Plan which is developed as the result of an overall "Unsuccessful" Employee Service Rating;

- Participation in any political activity prohibited by the Charter of the City of St. Louis or Civil Service Rules;
- Filing a fraudulent Workers' Compensation claim or accident report;
- Violating any of the provisions of the City's Code of Conduct;
- Falsification of time records or other official City records;
- Abandonment of job (employee fails to report to work or to call and report reason for absence for 3 consecutive working days);
- Any other violation which is so serious that continued employment in the agency would pose a threat to the patients, clients, employees, visitors, or the public confidence in and well-being of the agency.

The foregoing has been provided to assist in the uniform imposition of discipline in the City Service.

Questions concerning this administrative regulation should be referred to the Personnel Services Section of the Department of Personnel at 622-3251.

DEPARTMENT OF PERSONNEL

Richard R. Frank
Director of Personnel

# EXHIBIT 2

# EMPLOYEE
# CODE OF CONDUCT



## City of St. Louis
## Lyda Krewson, Mayor

We recognize that City employees have responsibilities to various groups:

- The public
- Elected officials who represent the public
- Their appointing authorities and supervisors
- Fellow employees
- Representatives of other agencies/organizations

These unique responsibilities require each of us to act with honor, faithfulness, loyalty, fairness and due diligence in conducting our job duties; and require us to report improper, unethical or unlawful behavior.

City employees must, at all times, comply with all applicable laws and regulations. Failure to comply with all applicable laws and regulations or unethical behavior in connection with the performance of an employee's duties will not be condoned or permitted. The City does not permit any activity that fails to stand the closest possible public scrutiny.

Any employee who is arrested, charged, indicted and/or convicted of any criminal charge that occurs on or off duty, whether engaged in City business or not, is required to report the arrest, charge, indictment or conviction to his/her appointing authority within five (5) calendar days of the arrest, charge, indictment or conviction. Any employee who fails to comply with this requirement will be subject to disciplinary action up to and including dismissal.

## RESPONSIBILITIES

**The City and its Appointing Authorities are responsible for:**

- Setting an example of competence and appropriate ethical behavior
- Implementing and abiding by this Code of Conduct
- Ensuring that all employees receive a copy of the Code of Conduct and returning the signed copies to the official Department of Personnel files upon initial hire, and thereafter on an annual basis as part of the employee's annual service rating
- Providing job training for all employees
- Emphasizing acceptable standards of performance for each job
- Clarifying City policies and procedures for all employees who might be unclear as to what is appropriate behavior
- Providing working conditions which enable City employees to accomplish their assigned duties fairly and safely

Exhibit 2
GARAVAGLIA 28

- Providing a workplace environment that encourages open communication, free of fear of reprisal, in the belief that respectful honesty is the surest way to identify problem areas, address them and resolve them
- Providing an avenue for employees to report alleged violations of this Code to their supervisor, appointing authority or the Department of Personnel

## City Supervisors are responsible for:

- Setting an example of competence and appropriate ethical behavior
- Teaching all employees under their supervision how to do their jobs within the guidelines of this Code
- Emphasizing acceptable standards of performance to all employees
- Emphasizing and clarifying City policies and procedures for all employees
- Managing their area of responsibility, and the actions of their staff in accordance with this Code
- Maintaining a workplace environment that encourages open communication, free of the fear of reprisal, in the belief that respectful honesty is the surest way to identify problem areas, address them fairly, and resolve them

## City Employees are responsible for:

- Competence and ethical behavior
- Reading, signing, and agreeing to abide by the provisions of this Code of Conduct upon initial employment and on an annual basis thereafter
- Regularly reviewing this Code and comparing their own behavior to the responsibilities and standards described in this Code
- Performing their job within the guidelines of this Code
- Meeting acceptable standards of performance
- Following City policies and procedures
- Contributing to a workplace attitude that respects the standards and behaviors promoted by this Code
- Seeking assistance when they are uncertain about the right thing to do
- Ensuring that their own actions are not illegal, unethical, or in violation of the rules and regulations of the City of St. Louis
- Reporting alleged violations of this Code of Conduct to their supervisor, appointing authority, or the Department of Personnel

## STANDARDS OF BEHAVIOR

The City of St. Louis is committed to protecting its revenue, property, information and other assets from any attempt, either by members of the public, contractors, vendors, agents or its own employees to gain, by deceit, financial or other benefits at the expense of the City taxpayers.

## Work Rules

This Code of Conduct is intended to supplement the Civil Service Rules of the City of St. Louis, the Administrative Regulations of the Department of Personnel and other City and departmental work rules, regulations, policies and procedures. Employees shall be held accountable for following all such established work rules, in addition to the standards of behavior outlined in this Code of Conduct.

2

### Discrimination/Harassment

The City of St. Louis prohibits discrimination and/or harassment on the basis of race, color, national origin, ancestry, age (40 years and older), disability, religion, sex, sexual orientation, gender identity or expression, marital status and genetic information and prohibits retaliation for filing a complaint or cooperating or participating in an investigation of a complaint of discrimination or harassment. The City supports merit system principles that assure equality and equal opportunity. If an employee believes he/she has been the victim of discrimination, harassment and/or retaliation, the employee should bring his/her concerns to his/her supervisor, appointing authority or the Department of Personnel Employee Relations Section. Additionally, if an employee has questions or concerns with an issue involving the Americans with Disabilities Act, he/she may also bring his/her concerns to the attention of the City's Commissioner on the Disabled.

### Violence

The City of St. Louis has zero tolerance for work related violence or threats of violence regardless of when or where they occur, both on and off duty. Please refer to the current Department of Personnel Administrative Regulation "Policy on Workplace Violence."

### Confidential Information and Records

As a part of an employee's job, he/she may have access to confidential information and records. This information should not be disclosed to fellow employees who do not have a business need to know or to non-employees for any reason, except in accordance with established procedures. Questions regarding the confidentiality of information should be directed to an employee's supervisor, the custodian of records for his/her department/division or the City Counselor's Office.

### Political Activities

Civil Service employees may be a member of a political organization, such as a ward organization, but may not be an officer of such an organization. An employee may contribute money in support of individual candidates for elected office, but may not be coerced or forced in any way to make a contribution. The Civil Service Rules allow yard signs at an employee's residence, a bumper sticker on any vehicle not used on City business and wearing political buttons when not on duty. The Civil Service Rules prohibit an employee in a competitive position in the classified service from taking an active part in a partisan political campaign, including but not limited to distributing literature, acting as a worker at the polls, calling voters on the telephone or circulating petitions. Please consult the Civil Service Rules for additional information regarding this subject or contact the Department of Personnel.

### Conflicts of Interest

The City expects that employees will perform their duties conscientiously, honestly, and in accordance with the best interest of the public. Employees must not use their position or knowledge gained as a result of their position for private or personal advantage.

Employees should continually be mindful that they are hired and paid to perform certain duties. Situations may arise, however, when there seems to be a conflict between their official responsibilities and their personal interests. These may be situations involving financial dealings, spending City funds, regulating businesses or individuals, purchasing supplies or materials or contracting for services. In order to avoid an impropriety – or giving the appearance of an impropriety – employees should alert their supervisors immediately of such conflicting situations. If the employee and the supervisor are unclear about the appropriate path to follow, the matter should be promptly referred to the City Counselor's Office.

3

GARAVAGLIA 30

Civil Service Rules allow employees, with the approval of their appointing authority, to hold a second job with some non-governmental employers. However, the employee must report all such employment to his/her appointing authority and receive approval of said secondary employment from his/her appointing authority prior to starting same. If an employee changes his/her secondary job, or the nature of his/her secondary job changes the employee must first obtain the written permission of the appointing authority. Please refer to the current Department of Personnel Administrative Regulation regarding Secondary Employment for further information.

## Nepotism

Both the Missouri Constitution and the Civil Service Rules prohibit nepotism such that "Any public officer or employee in this state who by virtue of his office or employment names or appoints to public office or employment any relative within the fourth degree, by consanguinity or affinity, shall thereby forfeit his office or employment." Further, Civil Service Rule VII, Section 12 states that no person in the classified service shall be transferred, promoted or by any other means placed in a position whereby they would be directly supervised by any relative within the second degree of consanguinity or affinity. The Director shall not knowingly certify any applicant, or approve any personnel action, which may result in a violation of the foregoing provisions. Appointing authorities shall not knowingly take such actions.

Relatives related by consanguinity (i.e. blood relative) and affinity (i.e. related to spouse/domestic partner) are described hereafter:

### Relations to the Fourth degree of Self or Spouse/Domestic Partner

Spouse, Domestic Partner

| | |
|---|---|
| First Degree: | Child, Parents |
| Second Degree: | Grandchild, Brother/Sister, Grandparents |
| Third Degree: | Great Grandchild, Niece/Nephew, Aunt/Uncle, Great Grandparents |
| Fourth Degree: | Great Great Grandchild, Grand Niece/Nephew, First Cousin, Great Aunt/Uncle, Great Great Grandparents |

Finally, in all instances, employees are prohibited from giving preferential treatment or favoritism to relatives or relatives of a spouse/domestic partner. Employees are encouraged to direct any questions to the Department of Personnel Employees Relations Section.

## Relationships with Third Parties

Employees are prohibited from having a personal interest, directly or indirectly, in a contract with the City. City employees must not allow their personal interests or relationships with third parties to influence, or create the impression of influencing, their decisions in the performance of their duties on behalf of the City.

## Gifts, Favors, Entertainments

Employees are expected to perform their duties in a fair and even-handed manner and are prohibited from taking payment, money, gifts, loans, meals, beverages and/or lodging, or other items of value from anyone in exchange for performing their duties. Delivery of services should be able to stand up to full public disclosure and should in no way be granted or withheld because of gifts, favors or other considerations offered to an employee. While acceptance of a minimal gift of less than $375 in value is permitted when not given in exchange for the performance of duties, even this is discouraged if the gift is from a firm

4

that does business with the City, since this may be viewed by some members of the public as an attempt to influence on-the-job actions or future decisions. By City ordinance an employee is required to report to the City Register any gift to them or a family member that exceeds $375 in value from an interested person. An interested person is defined here as any person or member of a business organization who conducts a business specifically regulated by the City; currently has or is seeking a contractual relationship with the City to provide goods or services to the City or any agency or department thereof; is seeking employment with the City or any agency thereof; or who is interested in establishing such a business relationship with the City. In all such matters involving gifts, the primary consideration is that the donor does not receive – or appear to receive – treatment not given to any other citizen. An employee's acceptance of payment or gifts in exchange for performing his/her duties will result in disciplinary action up to and including dismissal. If an employee has any concern about the wisdom, legality or honorability of accepting a gift, this concern should be brought to the attention of his/her supervisor, appointing authority, or the City Counselor's Office.

### Kickbacks, Secret Commissions, Bribes, and Payoffs

The City strictly prohibits the acceptance of kickbacks, secret commissions, bribes and payoffs from suppliers or others. Any breach of this rule will result in immediate dismissal and prosecution to the fullest extent of the law.

### City Funds

Whenever a City employee is responsible for handling cash or other financial matters, the job of the employee is to document every aspect of the transaction fully and completely. All City cash and bank accounts must be handled so as to avoid any question of bribery, kickbacks, other illegal/improper payments or suspicion of any impropriety whatsoever.

### Expense Reports

When an employee incurs an approved expense or spends his/her own funds on City needs, that expense must be documented promptly and properly on the forms provided by his/her appointing authority.

### Use of City Assets and Equipment

City assets and equipment are for City purposes only and not for personal benefit. The personal use of City assets including, but not limited to vehicles, computers and other supplies is prohibited.

### Records and Communications

Accurate and reliable records of many kinds are necessary to meet the City's legal and financial obligations and to manage the affairs of the City. The City's books and records must reflect in an accurate and timely manner all transactions. The employees responsible for accounting and record keeping must exercise diligence in fulfilling their job duties.

Employees must not make any misleading representations or falsify any record or engage in false communication of any kind, whether internal or external, including but not limited to making or filing any false expense, attendance, production, financial, or similar reports and statements.

### Dealing with the Public and Organizations

Employees are prohibited from speaking on behalf of the City, or from representing to the public that their comments or statements are those of the City, unless expressly authorized to do so.

## Prompt Communications

Employees should respond to all communications in a complete, accurate and timely manner. City employees are expected to respond promptly and courteously to all proper requests for information and to all complaints.

## Safety and Health

Maintaining a healthy workforce and ensuring the safety of every employee should be the job of each employee, regardless of his/her assignment. Accordingly, each employee is responsible for attending any required safety meetings and reading safety instructions regarding their workplace. All employees must comply with all safety rules and regulations. An employee should promptly report any unsafe condition or any accident to their supervisor, even in cases where there was no injury or property damaged.

## Honesty

City employees should be completely honest in their dealings with the public, elected officials, appointing authorities, supervisors and fellow employees. Lying in any form, omitting some facts or exaggeration undermines the fundamental trust that must exist between employer and employee, and has no place in public service.

## Discussion, Dissent, Support

When deciding on a course of action, City supervisors frequently rely on the views and opinions of their employees. In such cases, an employee is obliged to give as much information as possible, and his/her own best opinion, to the supervisor before the matter is decided. However, once the supervisor has reached a decision it is the duty of all members of the City Service to do all in their power to make it succeed.

## Reporting Fraud and Other Irregular Activities

As they perform their duties, City employees should be alert to situations in which other employees commit or are about to commit acts which violate the law or this Code of Conduct. Illegal, unethical or dishonest actions harm us all. Each City employee, therefore, has a responsibility and duty to report a co-worker's illegal or unethical conduct to his/her supervisor, appointing authority or the Department of Personnel.

## Penalties

Any violation of this Code of Conduct will subject the violator to disciplinary action up to and including dismissal.

## Documentation

Appointing authorities are required to issue a copy of the Code of Conduct to every employee under their authority. Issuance of the Code must be documented by having the employee and issuing supervisor or payroll clerk sign the "Acknowledgement" form issued by the Department of Personnel. The original of the form must be filed with the Department of Personnel within 5 (five) working days of issuance. One copy should be retained by the operating department or agency, and another copy given to the employee.

Published by:
Department of Personnel
City of St. Louis
1114 Market Street, Room 700
St. Louis, MO 63101-2043

GARAVAGLIA 33

## ACKNOWLEDGEMENT

I, (Print Name)_____
HAVE READ, UNDERSTAND AND AM IN COMPLIANCE WITH THE
PROVISIONS OF THE CODE OF CONDUCT. I AM NOT AWARE OF
ANY VIOLATIONS OF THIS CODE OF CONDUCT AT THIS TIME.
SHOULD I BECOME AWARE OF ANY VIOLATIONS OF THIS CODE
OF CONDUCT, I WILL NOTIFY MY SUPERVISOR, APPOINTING
AUTHORITY OR THE DEPARTMENT OF PERSONNEL IMMEDIATELY.

Signed: _____

Dated: _____

Department: _____

Division: _____

I certify that the employee named above was provided a copy of the
Employee Code of Conduct and a copy of this form on the date
indicated above.

_____
Supervisor/Manager/Payroll Clerk Signature

_____
Class Title

_____
Department

_____
Date

Revised 7/2017

# EXHIBIT 3

 

OFFICE OF THE COMPTROLLER
CITY OF ST. LOUIS

**DARLENE GREEN**
Comptroller

212 City Hall
(314) 622-4389
FAX: (314) 622-4026

August 28, 2019

Mr. James Garavaglia
5405 Elizabeth
St. Louis, MO 63110

Via: Hand-Delivered

RE: Pre-Termination Hearing

Dear Mr. Garavaglia:

A pre-termination hearing has been scheduled for Thursday, September 12, 2019 at 9am; this hearing will be conducted at 1520 Market Street, Suite 3005. Mr. Garavaglia, this hearing is according to the City of St. Louis Personnel Regulation NO. 117, Section VII. During this informal hearing, I will read the charges against you and provide supporting documentation or evidence, and you or your representative will have the opportunity to respond and present any evidence that you may have.

You are hereby charged with the following workplace violations:

1.  You have improperly signed multiple city contracts and contract extensions including automatic extensions without legal authorization to do so, putting the city at risk, dating back to 2009.

2.  Your failure to properly perform your duties and do the research to rectify issues has caused multiple telecommunication invoices to remain past due and unpaid for 18 months or more and you failed to report the same to your superior dating back to January 2018 and earlier.

3.  The Internal Audit section was denied access to audit the Transportation Center by you without cause and you failed to inform your superior of the same.

4.  You failed to perform or delegate a simple tax clearance task before attempting to cause real estate closing transaction (item) to be posted on the Estimate and Apportionment (E&A) Agenda.

5.  You improperly attempted to cause the item to be posted via subterfuge by misrepresenting the facts (truth) to your superior about the item and misrepresenting the facts (truth) about your superior's support for the item to other employees.

6.  You were insubordinate in the manner in which you improperly managed the signing process for the real estate closing documents.

7.  The investigation into your fiscal improprieties has been broadened to include the state auditor's.

Exhibit 3
GARAVAGLIA 36

The above mentioned fiscal improprieties are inconsistent with protecting the public and fiscal integrity of the office and are supported by documentation, including, but not limited to, emails. The multiple acts of fiscal irregularities and failure to disclose to your supervisor when discovered, insubordination, subterfuge, and failure to perform your duties is unbecoming of a high level employee such as yourself and cannot be allowed to continue.

*Various provisions of the City of St. Louis Department of Personnel, Administrative and Joint Regulations:

> https://www.stlouis-mo.gov/government/departments/personnel/documents/ordinances-regulations/personnel-administrative-and-joint-regulations.cfm

Various provisions of the Employee Code of Conduct including, but not limited to, the following:

> City Supervisors are responsible for:
> "Setting an example of competence and appropriate ethical behavior Maintaining a workplace environment that encourages open communication, free of the fear of reprisal, in the belief that respectful honesty is the surest way to identify problem areas, address them fairly, and resolve them."
>
> City Employees are responsible for:
> "Competence and ethical behavior; regularly reviewing this Code and comparing their own behavior to the responsibilities and standards described in this code."

> https://www.stlouis-mo.gov/government/departments/personnel/documents/index.cfm

The purpose of this pre-termination hearing is to allow you the opportunity to respond to the charges, review any evidence against you, and present any evidence on your behalf, including any mitigating circumstances that may be involved.

You may have a representative at the pre-termination hearing. It is your responsibility to notify your representative, if any, of the time, date, and location of the hearing and provide him/her with all documentation provided to you. Either you or your representative can make arrangements to review any evidence against you from receipt of this notification up until the time of the hearing itself. Failure to appear will result in you waiving your right to the said hearing.

A request to have this Pre-Termination Hearing rescheduled must be made in writing to me within 24 hours of the scheduled hearing date of September 12, 2019.

Sincerely,

Darlene Green
COMPTROLLER

Enclosures:    Regulation No. 117 Disciplinary Policy
               Administrative Joint Regulations - Personnel
               City of St. Louis Employee Code of Conduct


c:    Judy Armstrong, Appointing Authority
      Richard Frank, Director of Personnel