# Nicole Galloway, CPA

## Missouri State Auditor

City of St. Louis

Office of the Comptroller

Report No. 2020-021

May 2020 auditor.mo.gov



Nicole Galloway, CPA
Missouri State Auditor

# CITIZENS SUMMARY

## Findings in the audit of City of St. Louis Office of the Comptroller

| | |
|---|---|
| Accounting Controls and Procedures | Comptroller's office personnel do not record all monies received on prenumbered receipt slips or in a log and do not always restrictively endorse checks or money orders immediately upon receipt. Comptroller's office personnel do not adequately review disbursement vouchers submitted by county offices (Circuit Attorney, Treasurer, Sheriff, etc.) prior to processing payments. The Comptroller's office has not established procedures to ensure new vendors not associated with a city contract are adequately validated prior to being included in the accounting system. |
| Fire Insurance Recovery Procedures | The Comptroller's office has not established adequate procedures to ensure fire insurance recovery monies held in escrow are properly handled and disbursed as required. In addition, a listing of recovery monies held is not reconciled to the Fire Insurance Recoveries Fund balance periodically. |
| Capital Assets | Records and procedures to account for city property are not adequate. |

In the areas audited, the overall performance of this entity was **Good**.*

*The rating(s) cover only audited areas and do not reflect an opinion on the overall operation of the entity. Within that context, the rating scale indicates the following:

**Excellent:** The audit results indicate this entity is very well managed. The report contains no findings. In addition, if applicable, prior recommendations have been implemented.

**Good:** The audit results indicate this entity is well managed. The report contains few findings, and the entity has indicated most or all recommendations have already been, or will be, implemented. In addition, if applicable, many of the prior recommendations have been implemented.

**Fair:** The audit results indicate this entity needs to improve operations in several areas. The report contains several findings, or one or more findings that require management's immediate attention, and/or the entity has indicated several recommendations will not be implemented. In addition, if applicable, several prior recommendations have not been implemented.

**Poor:** The audit results indicate this entity needs to significantly improve operations. The report contains numerous findings that require management's immediate attention, and/or the entity has indicated most recommendations will not be implemented. In addition, if applicable, most prior recommendations have not been implemented.

# City of St. Louis - Office of the Comptroller
# Table of Contents


State Auditor's Report 2

Management Advisory Report - State Auditor's Findings

1. Accounting Controls and Procedures ....................4
2. Fire Insurance Recovery Procedures ....................7
3. Capital Assets ....................8

Organization and Statistical Information 11



# NICOLE GALLOWAY, CPA
## Missouri State Auditor

To the Honorable Comptroller
City of St. Louis, Missouri

We have audited certain operations of the City of St. Louis Office of the Comptroller in fulfillment of our duties under Section 29.200.3, RSMo. The State Auditor initiated audits of the City of St. Louis in response to a formal request from the Board of Aldermen. The city engaged KPMG LLP, Certified Public Accountants (CPAs), to audit the city's financial statements for the years ended June 30, 2019, and 2018. To minimize duplication of effort, we reviewed the CPA firm's reports. The scope of our audit included, but was not limited to the year ended June 30, 2018. The objectives of our audit were to:

1. Evaluate the office's internal controls over significant management and financial functions.

2. Evaluate the office's compliance with certain legal provisions.

3. Evaluate the economy and efficiency of certain management practices and procedures, including certain financial transactions.

Our methodology included reviewing written policies and procedures, financial records, and other pertinent documents; interviewing various personnel of the office, as well as certain external parties; and testing selected transactions. We obtained an understanding of internal controls that are significant within the context of the audit objectives and assessed whether such controls have been properly designed and placed in operation. We tested certain of those controls to obtain evidence regarding the effectiveness of their design and operation. We also obtained an understanding of legal provisions that are significant within the context of the audit objectives, and we assessed the risk that illegal acts, including fraud, and violations of applicable contract, grant agreement, or other legal provisions could occur. Based on that risk assessment, we designed and performed procedures to provide reasonable assurance of detecting instances of noncompliance significant to those provisions.

We conducted our audit in accordance with the standards applicable to performance audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States. Those standards require that we plan and perform our audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides such a basis.

The accompanying Organization and Statistical Information is presented for informational purposes. This information was obtained from the agency's management and was not subjected to the procedures applied in our audit of the Office of the Comptroller.



STL002175

For the areas audited, we identified (1) deficiencies in internal controls, (2) noncompliance with legal provisions, and (3) the need for improvement in management practices and procedures. The accompanying Management Advisory Report presents our findings arising from our audit of the City of St. Louis Office of the Comptroller.

Additional audits of various officials and departments of the City of St. Louis are in process, and any additional findings and recommendations will be included in subsequent reports.

Nicole R. Galloway, CPA
State Auditor

The following auditors participated in the preparation of this report:

| | |
|---|---|
| Director of Audits: | Kelly Davis, M.Acct., CPA, CFE |
| Audit Manager: | Heather R. Stiles, MBA, CPA, CFE |
| In-Charge Auditor: | Erin N. Dierksen |
| Audit Staff: | Rachel Cline, M.S. Acct., CPA |
| | Ryan P. Tierney, MAcc |
| | Satyam Shah |



STL002176

# City of St. Louis Office of the Comptroller
# Management Advisory Report
# State Auditor's Findings

## 1. Accounting Controls and Procedures

The Comptroller's office has not established sufficient controls or procedures for receipting, recording, reconciling, and transmitting monies. In addition, the office does not have adequate procedures in place to ensure disbursement vouchers are sufficiently reviewed prior to processing and new vendors are properly verified.

### 1.1 Receipting, recording, and transmitting

Comptroller's office personnel do not record all monies received on prenumbered receipt slips or in a log and do not always restrictively endorse checks or money orders immediately upon receipt. In addition, monies received are not always transmitted timely to the Treasurer's office and Comptroller's office personnel do not consistently and timely reconcile receipt logs to receipt transmittals to ensure all monies received are transmitted for deposit.

The Accounting Services section of the Comptroller's office directly receives most payments made to the Comptroller's office. Checks and money orders received are entered into a receipt log maintained by the section's personnel and restrictively endorsed upon receipt, and forwarded to the Financial Reporting section for coding and transmittal to the Treasurer. However, in other office sections, personnel do not always issue a prenumbered receipt slip or enter the receipt in a receipt log, and checks and money orders are not always restrictively endorsed immediately upon receipt. For example, personnel in the office's Real Estate section do not issue prenumbered receipt slips or log monies when received. Instead, money received is forwarded to the Accounting Services section to be logged and restrictively endorsed.

During our review of monies received and logged by the Accounting Services section between January 29, 2018, and February 2, 2018, we noted 6 checks totaling $72,522, associated with the Real Estate section, were received on February 1, 2018, and not coded by the Financial Reporting section until February 9, 2018 and transmitted to the Treasurer's office until February 12, 2018 (7 business days later). In addition, office personnel only reconciled 6 of the 49 checks recorded in the receipt log during this period to a receipt transmittal timely.

Failure to implement adequate receipting, recording, and transmitting procedures increases the risk that loss, theft, or misuse of monies received will go undetected and accounting records will contain errors. To adequately account for collections and reduce the risk of loss or misuse of monies, all monies received should be recorded on either official prenumbered receipt slips or a log and restrictively endorsed immediately upon receipt and the receipt records should be reconciled to the transmittal to the Treasurer's office by someone independent of the receipting and collection functions.

### 1.2 Expenditure review

Comptroller's office personnel do not adequately review disbursement vouchers submitted by county offices (Circuit Attorney, Treasurer, Sheriff,

etc.) prior to processing payments. They indicated if a disbursement voucher submitted by a county office is missing required information (contract number, purchase order number, bid documentation, etc.), the voucher is processed without attempting to obtain that information as is done for any incomplete city office disbursement voucher. Comptroller's office personnel indicated they do not believe they have the authority to question county expenditures if the funds have been budgeted. Our review of expenditures noted 2 of 6 disbursement vouchers received from county offices did not have all required information. Comptroller's office personnel indicated they completely rely on the county officials' approval to ensure the expenditure is appropriate.

Adequate, consistent review and approval of all city expenditures is necessary to ensure transactions are accounted for properly and assets are adequately safeguarded.

### 1.3 Vendor verification

The Comptroller's office has not established procedures to ensure new vendors not associated with a city contract are adequately validated prior to being included in the accounting system. To establish a new vendor for a contract, the Contract Administration section requires documentation of business legitimacy including licensure and tax compliance. Comptroller's office personnel do not perform similar verification for new vendors not associated with a contract.

Unverified vendor information increases the risk that false vendors could be established resulting in the loss, theft, or misuse of city funds going undetected.

## Recommendations

The Comptroller's office:

1.1 Ensure all monies received are immediately recorded on an official prenumbered receipt slip or receipt log that is reconciled to monies transmitted to the Treasurer's office by someone independent of the receipting and collection function. The Comptroller should also transmit all monies timely and restrictively endorse checks and money orders immediately upon receipt.

1.2 Ensure all information required to process a payment voucher is properly documented before processing the payment.

1.3 Ensure procedures are in place to review and approve all new vendors prior to adding them to the accounting system.

## Auditee's Response

*1.1 The Comptroller's office will improve its procedures and require all checks to be mailed to a central location - the Accounting Services section in city hall room 311 - in order to ensure proper controls for*

*logging and restrictively endorsing the checks received. The improvements will ensure the receipts will be transmitted to the Treasurer's office for deposit timely. If there is a question regarding the coding of the check, a note will be documented in the comment section of the check log. Reconciliation of the check log will be completed on a weekly basis. Any questions regarding the reconciliation will be brought to the Financial Reporting Manager's attention immediately.*

*The processing of checks received shall be further improved with the implementation of the new accounting system.*

*1.2* *The Comptroller's office has comprehensive policies and procedures in place for the review and approval of all city expenditures. The Comptroller's office requires all offices, including county offices, to provide detailed documentation when submitting expenditures for approval. However, county expenditures are ultimately approved by the county office and are regulated and controlled exclusively by state law. The Comptroller's office can be challenged regarding authority to suspend or otherwise delay the processing of expenditures approved and submitted by a county office.*

*The Missouri Supreme Court affirmed this principle in City of St. Louis v. Doss, 807 S.W.2d 61 (Mo. 1991):*

> *Subjecting county officials to the regulation of the diverse public entities for whom they perform services would soon lead to chaos. So long as the License Collector performs functions which are those identified with a county office, and so long as that office is elected in the state election as are other county offices, it remains a county office and subject to legislative control.*

*The Comptroller's office will seek a legal opinion to further clarify the documentation requirements for county offices going forward. Further improvements will also be encouraged with the implementation of the new accounting system in the near future. In the meantime, the Comptroller's office will continue to process all expenditures with accurate documentation as required.*

*1.3* *Procedures for vendor files will be updated to properly review and approve new vendors prior to being added to the accounting system. The new accounting system will improve the vendor review processes.*





## 2. Fire Insurance Recovery Procedures

The Comptroller's office has not established adequate procedures to ensure fire insurance recovery monies held in escrow are properly handled and disbursed as required. In addition, a listing of recovery monies held is not reconciled to Fire Insurance Recoveries Fund balance periodically. As of February 28, 2019, the Fire Insurance Recoveries Fund had a balance of $3,887,307.

According to Chapter 25.66 of the City Code, insurance carriers must pay 25 percent of the insurance proceeds to the Comptroller when a payment on a claim made for damage to a building or structure due to fire, explosion, or other casualty loss exceeds 50 percent of the face value of the policy on the building or structure. The Comptroller must hold the money in an interest bearing account. If the owner repairs or demolishes a building without cost to the city, the insurance proceeds are refunded to the insured party.

If the city incurs costs to repair or demolish the property, the Comptroller's office is authorized to issue a special bill against the property for certified costs and requires the bill to be paid from the money held by the Comptroller, with any excess to be paid to the insured party. If a property is transferred to the Land Reutilization Authority, Saint Louis Development Corporation or any other city agency, department, or division, city code allows the bill to be waived.

### Funds not disbursed

As of February 28, 2019, the Comptroller held fire insurance recovery monies in escrow for 202 properties. Twenty-five of these properties had an escrow balance of at least $10,000 that had initially been received by the Comptroller's office in 2010 or earlier. Structures on 8 of these 25 properties had been demolished with the lots vacant as of 2010. However, Comptroller's office personnel have not returned remaining recovery monies associated with these 8 properties to the insured party and could not explain why this had not occurred. The amount held totaled $113,050.

### Escrow listing

The Comptroller's office does not reconcile the fire insurance recoveries database to the fund balance of the Fire Insurance Recoveries Fund and ensure all monies are accounted for and records are complete. Detailed information about money held and the related properties is documented in the Fire Insurance Recoveries database. We obtained a list of properties recorded in the database as of February 28, 2019. According to the listing, the Comptroller's office held $3,640,692 in recovery money at that time. However, the fund balance for the Fire Insurance Recoveries Fund was $3,887,307, $246,615 more than database records indicated. We requested an updated listing from the database and the fund balance as of January 31, 2020. The fund balance, $3,527,485, still exceeded the amount listed in the database as held, $3,388,448, by $139,037 indicating database records may be incomplete and missing information on some properties.



STL002180





Conclusion

Fire insurance recoveries monies held in escrow are restricted funds held for property owners until remediation is complete. Periodic follow-up on properties with a balance is necessary to ensure holdings are properly disbursed, and any balance remaining is returned to the owner or disbursed as otherwise provided by state law.[1] In addition, a monthly reconciliation between the list of properties with balances to monies held in the Fire Insurance Recoveries Fund is necessary to ensure proper accountability, records are complete, and monies are sufficient to meet liabilities.

## Recommendation

The Comptroller's office should establish procedures to ensure Fire Insurance Recoveries monies held in escrow are properly handled and disbursed as required. In addition, monthly lists of properties with escrow balances should be reconciled to the Fire Insurance Recoveries Fund balance. Unidentified differences should be promptly investigated and resolved.

## Auditee's Response

*The Comptroller's office is updating policies and procedures in an effort to limit the number of employees who receive checks. All payments will be required to be mailed to one central location - the Accounting Services section - and backup information will be proved to the other sections as needed. The improvements will assure that proper internal controls are in place to ensure all checks received are restrictively endorsed and properly recorded in the collection log immediately upon receipt.*

*The Real Estate section will improve its follow-up on properties with departments and owners to ensure monies held are properly disbursed timely according to state law.*

*Additionally, a monthly reconciliation will be performed to reconcile the escrow balances in the Fire Insurance Recoveries Fund to the internal database of listed properties by the Real Estate section and be submitted to the supervisor for review and approval. A final reconciliation between the Accounting Services section and the Real Estate section will be performed annually, along with an annual review performed by the Internal Audit section.*

## 3. Capital Assets

Records and procedures to account for city property are not adequate. As a result, assets are more susceptible to theft or misuse and capital asset records are incomplete and inaccurate.

According to the Fixed Asset Management System (FAMS) policy and procedure manual, the Comptroller's office is responsible for maintaining a

[1] Section 447.532, RSMo, provides that intangible personal property held for an owner by a political subdivision that remains unclaimed for more than three years is deemed abandoned and shall be turned over to the State Treasurer's Unclaimed Property Division.





complete detailed record of all city property, coordinating the annual physical inventory of all city property, and having the Internal Audit section conduct periodic physical inventories.

Each city department is required to conduct an annual physical inventory of all of that department's property, reconcile the inventory to the capital asset listing provided by the Comptroller's office, and notify the Comptroller's office of capital asset additions, retirements, transfers, and adjustments or corrections necessary to ensure city records are accurate and complete.

We identified the following concerns during our review of capital assets.

- The FAMS manual has not been updated to reflect current practices.
- Capital asset additions, retirements, and transfers between offices are not consistently reported to the Comptroller's office for input into the FAMS.
- City personnel are not required to tag, number, or otherwise identify capital assets.
- Annual physical inventories of some city assets are not conducted or reconciled to the capital asset listing.

Adequate capital asset records and updated policies and procedures are necessary to provide controls over city property; safeguard city assets that are susceptible to loss, theft, or misuse; and provide a basis for proper financial reporting and insurance coverage. In addition, property control tags should be affixed to all property items to help improve accountability and ensure assets are properly identified as belonging to the city.

## Recommendation

The Comptroller's office ensure complete and detailed capital asset records are maintained and capital asset policies are updated. In addition, the Comptroller's office should require city personnel properly tag, number, or otherwise identify all applicable city property, and conduct and document an annual inventory.

## Auditee's Response

*The Comptroller's office has comprehensive fixed asset policies and procedures in place to ensure accurate accounting and reporting of all city assets. In our policy and procedures manual, known as the FAMS manual, all city departments are required to notify the Comptroller's office promptly of any additions or deletions to their inventory. In addition, department coordinators are also required to maintain a separate internal listing of fixed assets in their department and perform a yearly physical inventory count to ensure accuracy. Finally, departments are required to perform an annual reconciliation of the internal listing to the master listing and general ledger maintained by the Comptroller's office. In addition to these requirements and*

*among others, the Internal Audit section performs upwards of 10 fixed asset audits annually of various city departments.*

*As we move forward, the fixed asset department of the Comptroller's office, in conjunction with all city department asset coordinators, will begin tagging all fixed assets as "Property of the City of St. Louis." Additionally, the fixed asset department will begin requiring all department coordinators to report the results of their annual physical inventory to our office by September 1st of each year. This will ensure the procedures put forward by the Comptroller's office are being followed.*

*The Comptroller's office, working through the fixed asset department, will continue to require city departments follow all procedures found in the FAMS manual. We will update the FAMS manual as needed and continue to work with department coordinators to ensure these efforts are clearly carried out.*

# City of St. Louis - Comptroller's Office
# Organization and Statistical Information

The Comptroller is responsible for all city fiscal affairs including the city's property, assets, and claims. The Comptroller is the Chief Financial Officer for the city, serves on various city boards and commissions, and is one of three members of the Board of Estimate and Apportionment. Darlene Green was first appointed Comptroller in October 1995 and first elected Comptroller in August 1996. She was reelected to her current 4-year term in April 2017. At June 30, 2018, the Office of the Comptroller employed approximately 93 full-time employees.

The Office of the Comptroller has 10 sections including Accounting Services, Asset Management, Contract Administration, Federal Grants, Finance and Development, Financial Reporting, Gateway Transportation Center, Internal Audit, Payroll Services, and Tax Increment Financing.

The Accounting Services section is responsible for all of the city's accounting activities. This section reviews and processes accounts payable, manages and balances the city's accounting and financial records, supervises payroll, updates the Central Business Index business tax and license records, assists in decisions for risk to insure or self-insure, and administers the citywide travel policy.

The Asset Management section includes the municipal garage, real estate, records retention, and telecommunications. This section installs and maintains city telephone systems, handles the purchase or sale of real estate, leases and collects rent on city and port property leases, manages the fire insurance escrow recovery monies, operates the municipal garage, provides pool vehicles for city departments, and supervises the microfilm and archival library.

The Contract Administration section is responsible for processing and tracking city contracts with city vendors. This section reviews contracts to ensure compliance with applicable laws and policies, such as tax and license compliance, proper departmental approval, ordinance authority, insurance required, and amount encumbered.

The Federal Grants section is responsible for administering the disbursement of federal and state grant funds and the city's Single Audit. This section reviews grant funded contracts (with the exception of the Community Development Administration), grant reimbursement requests, and accounts for grant receipts.

The Finance and Development section is responsible for the management of the city's financing arrangements, administration of debt issuances, and the city's debt policies. This section assists with financing decisions for economic development and special projects that are dedicated to improving the city's economic condition. This section ensures compliance with debt covenants, applicable laws, and disclosure compliance guidelines.





The Financial Reporting section is responsible for the city's financial reporting. This section prepares internal financial and revenue reports including the Comprehensive Annual Financial Report, Cash Basis Report, and Monthly Revenue and Fund Status reports. Additionally, the Financial Reporting section is responsible for reviewing and tracking bank reconciliations, tracking investment and financing arrangements, and administration of the lateral sewer program.

The Gateway Transportation Center section manages all transportation and other vendor contracts for the Gateway Transportation Center. The center is a multimodal transportation hub for passenger train, long distance bus, public light rail, and public bus service.

The Internal Audit section provides independent assurance and consulting services to virtually all city departments. This section performs payroll reviews, contract audits, and other various internal audits and reviews to support the assurance that applicable laws, policies, and procedures are being followed. The city's fraud hotline is also administered by this section.

Payroll Services is responsible for the processing of payroll checks and ensuring all classified service employees receive the proper pay and have the appropriate payroll deductions.

The Tax Increment Financing (TIF) section is responsible for financial reporting and debt payment of tax increment financing projects approved by the TIF Commission. The TIF section is also responsible for financial reports and reimbursement of special development projects financed by the city's general revenue.



STL002185