UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES GARAVAGLIA,                    )
                                     )
      Plaintiff,                     )
                                     )
    v.                             )        Case No. 4:20 CV 1681 CDP
                                     )
CITY OF ST. LOUIS, et al.,           )
                                     )
      Defendants.                    )

## MEMORANDUM AND ORDER

On October 1, 2019, plaintiff James Garavaglia retired from his employment with defendant City of St. Louis.  He held the position of Deputy Comptroller, Finance and Development, at the time of his retirement and was supervised by defendant Comptroller Darlene Green.  In this employment discrimination action, Garavaglia, a white male over 40 years old, claims that his retirement constituted a constructive discharge because Green's harassment directed to him on account of his race, age, and/or sex rendered his working conditions so intolerable that he had no choice but to retire earlier than he had planned.  Because Garavaglia did not provide the defendants a reasonable opportunity to remedy the alleged discriminatory conduct and, further, has presented no evidence showing that the conduct allegedly giving rise to his retirement decision was motivated by any discriminatory animus, I will grant the defendants' motion for summary judgment.

## Background

Garavaglia, a white male, was employed with the City of St. Louis from April 1987 until he retired effective October 1, 2019.  He was 67 years old when he retired.  In May 2016, Comptroller Green, an African American female, had promoted Garavaglia from his position of Asset Manager (which he had held for nearly 20 years) to the position of Deputy Comptroller, Finance and Development – a position that became available upon the death of the previous officer holder, who was an African American female.  At the time of Garavaglia's promotion and continuing throughout the period relevant to this lawsuit, Beverly Fitzsimmons held the position of Deputy Comptroller.  Fitzsimmons is a white female six years younger than Garavaglia.

As Deputy Comptroller, Finance and Development, Garavaglia supervised several activities assigned to the Comptroller's office, including administration of telecommunication systems serving City departments; real estate transactions involving City property; administration of the Gateway Transportation Center; administration of public borrowings through bond issuance, bond refunding, and lease purchase agreements; and supervising an internal audit.  He was not authorized to sign contracts that bind the City.  Nor was he authorized to sign contracts when he served as Asset Manager.

As Deputy Comptroller, Finance and Development, Garavaglia was

involved in the Municipal Courts (Muni Courts) Project – a years-long, multi-million-dollar redevelopment project involving the City's municipal court building. In early June 2019, Garavaglia became aware that the developer intended to request a deadline extension from the City because of financing issues, and he asked Fitzsimmons to add the issue to the preliminary agenda for the upcoming June 19 meeting of the Estimate and Apportionment (E&A) Board.  The item was later removed from the agenda.  While there is a dispute as to whether Green knew of Garavaglia's initial request, there is no dispute (and several email exchanges and Garavaglia's deposition testimony show) that there was confusion regarding whether the issue was placed on the agenda, at whose behest, and the reasons why it was removed.  At the June 19 meeting, the mayor addressed this confusion and read the emails into the record, which embarrassed Green.  Given the lack of required public notice of the issue, it was not addressed at the June 19 meeting; but because the developer's requested extension was an urgent matter, a special meeting was scheduled for June 24.

The E&A Board approved the developer's request for extension at the special meeting held June 24.  Once E&A approved the request, all of the related documentation had to be signed and submitted to the City Register's office no later than 5:00 p.m. on Friday, June 28.  Garavaglia was responsible for assuring that the documents were properly vetted and in order before submitting them to the

Comptroller.  Instead of delivering the documents to Garavaglia's office for review, however, the developer submitted them directly to the mayor's office. When Garavaglia learned of this on the morning of June 26, he directed the mayor's secretary to send the documents to his office via interoffice mail, expecting that he would receive the documents that afternoon.  By the end of the business day on June 26, however, the documents had not yet arrived in Garavaglia's office and their whereabouts were unknown.

In the meanwhile, Garavaglia was scheduled to leave for vacation the following day, June 27.

Given the unknown whereabouts of the time-sensitive documents and Garavaglia's upcoming scheduled absence from the office, the City's outside counsel, Tom Ray, contacted Green's executive assistant on June 26 and advised that there may be problems timely executing the documents, which could result in default.  At Green's direction, a conference call was held between herself, Ray, Garavaglia, and others to set up a process to review the documents when they arrived at Garavaglia's office, to deliver them to Green, and to have them executed and filed before the deadline.

The documents arrived in Garavaglia's office the morning of June 27. Garavaglia had already left for vacation and was not scheduled to return until the following week.  Garavaglia's assistant delivered the documents to Green's office

- 4 -

the afternoon of June 27 and, after resolution of some deficiencies in the documents, they were executed and timely filed in the Register's office. Garavaglia agrees with Green's executive assistant's assessment that the manner by which the documents were delivered, reviewed, and executed was chaotic. Green testified that because these documents were time-sensitive financial documents, Garavaglia should have instructed the mayor's office to hand-deliver them instead of instructing that they be placed in interoffice mail.

Green perceived that the confusion regarding the June 19 E&A agenda was because of Garavaglia's misrepresentations and his providing incomplete information regarding his proposed agenda item.  She perceived that the mishandling of documents during the week of June 24 was because of Garavaglia's failure to follow protocol in the delivery of time-sensitive material.  Given these events, Green decided on June 28 that some form of discipline was needed for Garavaglia to understand the seriousness of the matter.

On June 29, 2019, Judy Armstrong, appointing authority designate for the Comptroller, called City Personnel Director Richard Frank and advised that Green had concerns regarding Garavaglia's handling of fiscal issues and compliance with office protocols serious enough to warrant that Garavaglia be placed on forced leave.  In a letter to Frank dated July 2, Green formally requested that Garavaglia be placed on forced leave and Frank approved the request that same date.  Green

then provided written notice to Garavaglia that he was being placed on forced leave.  Armstrong delivered the notice to Garavaglia on July 2, after which Garavaglia surrendered his keys and badge and was escorted from the building. Garavaglia appealed his forced leave, and the Civil Service Commission scheduled a hearing for July 23.

With Garavaglia on forced leave, Green directed Armstrong and others to fill in for him and perform certain of his duties.  Armstrong assumed Garavaglia's duties with respect to the Gateway Transportation Center, and she worked with a staff attorney to reconcile certain outstanding invoices from AT&T.  During the performance of these duties, Armstrong discovered what she perceived to be contracts executed on behalf of the City by Garavaglia in both his capacity as Asset Manager and as Deputy Comptroller.  Given this newly discovered information, Green determined that additional investigation was required, which would extend beyond the initial period of forced leave.  On July 18, Green withdrew her July 2 request for forced leave, and she requested Frank's approval to place Garavaglia on forced leave effective July 18 pending an investigation into newly discovered fiscal improprieties.  Frank approved the request that same date. The withdrawal of the July 2 request for forced leave had the effect of restoring Garavaglia's vacation time that he used during the forced leave period.  In a letter to Garavaglia dated July 18, Green provided notice that he was being placed on

forced leave as of July 18.  On August 13, Frank approved Green's request that Garavaglia's forced leave be extended for an additional thirty days pending the ongoing investigation and an anticipated report by the state auditor.  Garavaglia appealed this forced leave, and the Civil Service Commission scheduled a hearing for August 29.

In a memorandum directed to Green dated August 26, 2019, Armstrong documented what she perceived to be improperly executed contracts by Garavaglia with AT&T in January 2009 and with Waste Management in May 2017, as well as outstanding bills from AT&T showing a balance due from the City of more than $900,000 on one account and more than $465,000 on another account. Armstrong's memorandum also documented that certain City divisions were at risk of having their service disconnected because of nonpayment, and that a May 2015 request to reconcile a billing discrepancy went unanswered by Garavaglia.

On August 28, 2019, Green submitted a letter to Frank withdrawing her July 18 request to place Garavaglia on forced leave, which had the effect of restoring Garavaglia's vacation time that he used during that forced leave period.  On that same date, August 28, Green provided written notice to Garavaglia that an informal pretermination hearing was scheduled for September 12 at which time Garavaglia would be presented with documentation or evidence of workplace violations, including improperly signing City contracts and contract extensions,

dating back to 2009; failing to rectify issues relating to unpaid and past due telecommunications invoices and failing to report such issues to his superior, dating back to at least 2018; denying access to the Internal Audit Section without cause; misrepresenting facts to his superior and misrepresenting his superior's position on an agenda item before the E&A Board; and insubordination.  This notice advised Garavaglia that he could be represented at the hearing, could review the evidence against him, and could present his own evidence including evidence of mitigating circumstances.

On August 30, 2019, Garavaglia applied for retirement effective October 1, 2019.  In January 2020, Green promoted LaTaunia Kenner, an African American female, to the position of Deputy Comptroller, Finance and Development.  Kenner was younger than Garavaglia and had been in the Comptroller's office for more than twenty-five years during which time she held the positions of accounting manager, assistant to the Comptroller, accounting supervisor at the airport, internal audit administrator, and special projects coordinator.

In this employment discrimination action, Garavaglia claims that his retirement constituted a constructive discharge, alleging that Green's conduct directed to him on account of his race, age, and/or sex – including being placed on forced leave – rendered his working conditions so intolerable that he had no choice but to retire earlier than he had planned.  In Counts I, II, and V of his Second

Amended Complaint, Garavaglia seeks relief against the City under the Age

Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act, and

the Missouri Human Rights Act (MHRA).  In Counts III and IV, he seeks relief

against Green in her individual capacity under 42 U.S.C. §§ 1981 and 1983.

Defendants seek summary judgment on all claims.

## Legal Standard

Summary judgment must be granted when the pleadings and proffer of

evidence demonstrate that no genuine issue of material fact exists and that the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c);

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of*

*Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  I must view the

evidence in the light most favorable to the nonmoving party and accord him the

benefit of all reasonable inferences.  *Scott v. Harris,* 550 U.S. 372, 379 (2007).

My function is not to weigh the evidence but to determine whether there is a

genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the burden of informing the Court of the basis of its

motion and demonstrating the absence of an issue for trial.  *Celotex Corp.*, 477

U.S. at 323.  Once a motion is properly made and supported, the nonmoving party

must either proffer evidence in the record that demonstrates a genuine issue of

material fact or show that the moving party's proffer does not establish the absence

of a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248; *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004).  The substantive law determines which facts are critical and which are irrelevant.  *Anderson*, 477 U.S. at 248.  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  *Id.*

In determining a motion for summary judgment, I consider only those facts that can be supported by admissible evidence.  Fed. R. Civ. P. 56(c); *Woods v. Wills*, 400 F. Supp. 2d 1145, 1175-76 (E.D. Mo. 2005).  Testimony that would not be admissible is ignored.  *Shaver v. Independent Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003).  Accordingly, speculation, personal opinion, and legal conclusions are not "facts" upon which a party may rely for summary judgment purposes.  *See Benford v. Grisham*, No. 1:18CV5 JMB, 2020 WL 569871 (E.D.  Mo. Feb. 20, 2020).

## Discussion

Garavaglia retired from his position with the City effective October 1, 2019. He alleges that he was forced to retire by the discriminatory acts of defendant Green based on his age, race, and sex.

Garavaglia does not allege direct evidence of discrimination.  I therefore

analyze his claim under the *McDonnell Douglas*[1] burden-shifting analysis. *See Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 763 (8th Cir. 2021); *Thompson v. Bi-State Dev. Agency*, 463 F.3d 821, 825 (8th Cir. 2006). Under this framework, Garavaglia must first establish a prima facie case of discrimination. If he meets this burden, the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason for the adverse employment action. If defendants meet this burden of production, Garavaglia must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendants are not their true reasons but are pretext for discrimination. *Thompson*, 463 F.3d at 825.

To establish a prima facie case of discrimination based on age, race, and/or sex, Garavaglia must show that he was a member of a protected class, that he met his employer's legitimate employment expectations, that he suffered an adverse employment action, and that the circumstances give rise to an inference of discrimination based on a protected factor. *Grant v. City of Blytheville, Ark.*, 841 F.3d 767, 773 (8th Cir. 2016).[2] "Although the 'burden of establishing a prima facie case . . . is not onerous,' the plaintiff must satisfy every element of his prima facie case, carrying at all times the 'ultimate burden of proof and persuasion' to

---

[1] 411 U.S. 792 (1973).

[2] Claims of discrimination brought under Title VII, the ADEA, the MHRA, § 1981, and § 1983 are subject to the same legal analysis. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 775-76 (8th Cir. 1995); *Bonenberger v. St. Louis Metro. Police Dep't*, 956 F. Supp. 2d 1059, 1065-66 (E.D. Mo. 2013).

establish that the employer discriminated against him on an impermissible basis." *Id.* (quoting *Torgerson*, 643 F.3d at 1046-47). To survive summary judgment, Garavaglia must substantiate his allegations with sufficient probative evidence; speculation or conjecture will not suffice. *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 539 (8th Cir. 2014).

A constructive discharge, "[j]ust like any other discharge," is an adverse employment action. *Thompson*, 463 F.3d at 825. An employee's choosing to retire early instead of continuing to work under intolerable working conditions may constitute a constructive discharge. *E.g.*, *Smith v. World Ins. Co.*, 38 F.3d 1456 (8th Cir. 1994). A constructive discharge occurs when an employer discriminates against an employee to the point that the working conditions become so unbearable that a reasonable person in the employee's position would feel compelled to leave his employment. G*reen v. Brennan*, 578 U.S. 547, 555 (2016). The employer's actions must have been intended to force the employee to quit, which is satisfied if the employee shows that his leaving his employment was a reasonably foreseeable consequence of the employer's discriminatory actions. *Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Loc. No. 101*, 3 F.3d 281, 284-85 (8th Cir. 1993). But if an employee leaves without giving his employer a reasonable chance to work out the problem, the employee is not constructively discharged. *Cosby v. Steak N Shake*, 804 F.3d 1242, 1246 (8th Cir. 2015).

Garavaglia admits that he did not complain to Green or any other City official about the alleged discrimination; nor did he complete the administrative process to challenge the alleged unlawful conduct.  While Green's withdrawal of forced leave effectively canceled Garavaglia's efforts to appeal those actions, there is no dispute that Garavaglia did not avail himself of the City's procedures after he received the August 28 notice of pretermination hearing.  Instead, he retired. Garavaglia testified that he did not pursue the administrative process because, if he was successful, he would have merely been placed back into a hostile work environment.  "I had enough and left.  I had no spirit to go about trying.  I didn't have the – I just didn't have what it took to go back and work in City government again."  (ECF 83-1, Garavaglia Depo. at p. 16.)  Because Garavaglia did not complain to Green or any City official about the alleged discriminatory work environment and he chose to not pursue administrative procedures before retiring, he gave his employer no reasonable opportunity to address and remedy the problem.  His constructive discharge claim thus fails.  *Cosby*, 804 F.3d at 1246; *McKee v. Reuter*, No. 4:16 CV 207 CDP, 2017 WL 3873109, at *5 (E.D. Mo. Sept. 5, 2017).

Regardless, the conduct of which Garavaglia complains does not rise to the level of actionable discriminatory conduct.

Garavaglia offers no evidence other than his own subjective belief to

- 13 -

substantiate his claim that he was discriminated against so severely that he had no option but to retire early.  *See Thompson,* 463 F.3d at 825 (plaintiff failed to offer evidence of intolerable working conditions, thus summary judgment in favor of employer was proper).  The only evidence Garavaglia offers to support his claim of discriminatory animus is:  1) Green's June 2016 congratulatory telephone call on his promotion, expressing happiness that with the significant pay increase, he can retire in a couple of years at a top position; 2) Green's ongoing "aloofness" toward him and failure to include him in her "inner circle"; 3) Green's pursing of her lips and looking down in the spring of 2019 when he informed her he intended to stay in his position until at least April 2021[3]; and 4) the promotion of Kenner, a younger African-American female, three months after he retired.  Garavaglia believes that his promotion in 2016 was part of Green's plan to ultimately place Kenner in the position of Deputy Comptroller and that when Green learned in 2019 that Garavaglia had no immediate plan to retire, she imposed unwarranted discipline on him to force him to leave.  Garavaglia testified that he formed this belief while on forced leave during the summer of 2019 (ECF 83-1, Garavaglia Depo. at p. 141) and that other than this belief, he had no evidence to support his theory beyond that cited above.  (*Id.* at pp. 72, 78-79, 131-32, 134-35, 144.)

An isolated statement to a 63-year-old regarding potential retirement in the

---

[3] Garavaglia testified that he also told Green that after April 2021, he would make only a year-to-year commitment and would like to eventually work part-time.

future and an ambiguous facial expression made three years later when learning of his intention to remain in his position do not give rise to an inference of discrimination.  No reasonable inference links the 2016 statement and 2019 facial expression to the disciplinary action imposed by Green.  *See Button v. Dakota, Minn. & E. R.R. Corp.*, 963 F.3d 824, 833 (8th Cir. 2020) (statement that employment position "was no place for a woman" is not indirect evidence of discrimination because no reasonable inference links statement to plaintiff's termination); *see also Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 427-28 (8th Cir. 1999) (other than plaintiff's speculation, outdated stray remarks are not probative evidence that discriminatory bias caused employer to give low rating). Nor does aloofness or not being in the boss's inner circle evince discrimination based on age, race, or sex.  *See Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 936 (8th Cir. 2002) (constructive discharge claim requires "considerably more proof than an unpleasant and unprofessional environment.").  And to the extent Green's months-later promotion of Kenner, a person not in Garavaglia's protected class(es), may itself sufficiently give rise to an inference of discrimination, *cf. Carter v. Atrium Hospitality*, 997 F.3d 803, 810 (8th Cir. 2021), defendants have nevertheless offered legitimate, non-discriminatory reasons for their disciplinary actions, and Garavaglia's evidence is insufficient to show that these reasons are pretext for discrimination.

Green placed Garavaglia on forced leave on July 2 because she felt Garavaglia needed to understand the seriousness of his missteps during the previous two weeks, namely failing to follow protocol, not being forthcoming with relevant information, and creating confusion regarding the E&A meeting agenda; and his role in the mishandling of time-sensitive finance documents, including directing that the documents be placed in interoffice mail instead of being hand-delivered when he knew he may be unavailable for document review because of a preplanned vacation. Garavaglia admits to the confusion regarding the June 19 E&A meeting and his communications regarding the agenda item, and he admits that the handling of the time-sensitive documents during the week of June 24 was chaotic. But he contends that he did not plan it to be that way, that he communicated with Green throughout the process, and that it all worked out in the end.

Green placed Garavaglia on forced leave on July 18 because she learned from her staff that during their assumption of Garavaglia's responsibilities, they discovered what appeared to be several improprieties in Garavaglia's performance of his duties, including improperly executing contracts on behalf of the City dating back to 2009, failing to reconcile bills from communications vendors dating back to 2015, and failing to pay on AT&T accounts in an amount totaling over $1 million. Green testified that given the serious nature of these fiscal improprieties,

she determined to continue Garavaglia on forced leave so that additional investigation could be conducted.[4]  While Garavaglia disputes having signed one of the documents at issue, he admits to signing the others.  He claims, however, that he signed the documents only after being advised by attorneys in the city counselor's office that the documents were not contracts and thus could be signed by him.  As to the outstanding invoices totaling more than $1 million, Garavaglia admits that the invoices on their face show this circumstance to be true but that he was working with AT&T representatives to adjust the amounts owed and had set up a plan with AT&T for payment of adjusted amounts.

The August 28 notice of pretermination hearing documents Green's reasons for disciplinary action and details the alleged improprieties as set out above, including those discovered during Garavaglia's periods of forced leave.

Garavaglia's evidence does not create a genuine dispute as to the general bases of Green's disciplinary decisions, but he contends that pretext is shown by Green's exaggeration of the seriousness of his alleged misconduct and that if she had looked further into what she and her staff perceived to be improprieties, she would have discovered that he indeed followed protocol regarding the June 19 meeting, document handling, and document signing, and that he was in the process

---

[4] Notably, the manner by which Green managed Garavaglia's forced leave – that is, by withdrawing the July 2 forced leave and issuing a new period of forced leave on July 18 – resulted in the immediate restoration of Garavaglia's vacation time that was used during the first period of forced leave.

of curing the billing issues.  He also contends that Green had counseled him early in his tenure as Deputy Comptroller regarding his purported improper execution of documents, so her determination in July 2019 to actually discipline him for allegedly similar conduct shows pretext as well.

To show pretext for unlawful discrimination, Garavaglia may point to evidence that similarly situated employees outside his class were treated differently, *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 821-22 (8th Cir. 2017), but he has not done so here.  He may also show that his employer's explanation is unworthy of credence because it has no basis in fact, *id.*, but as set forth above, there were factual bases for Green's reasons to impose discipline.  While Garavaglia argues that he indeed followed protocol regarding the Muni Courts Project, had received city counselor authorization to sign documents now considered to be contracts, and was in the process of resolving the billing disputes, these assertions show only that Green's belief of Garavaglia's misconduct may have been mistaken.  *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1003 (8th Cir. 2012).  To prove that Green's explanations are false and not worthy of credence, Garavaglia must show that Green "did not actually believe" that his communications regarding the Muni Courts agenda item were confusing, or that his handling of the related Muni Courts documents created disruption and concern regarding their timely execution, or that agreements and other documents he signed

were contracts binding the City, or that the AT&T invoices showed delinquencies in payments.  *Liles*, 851 F.3d at 822.  But Garavaglia points to no evidence indicating that Green's beliefs as to these alleged improprieties were insincere. "The critical inquiry . . . is not whether the employee actually engaged in the conduct for which he was [disciplined], but whether the employer in good faith believed that the employee was guilty of the conduct justifying [the discipline]." *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 861-62 (8th Cir. 2009).

> If an employer . . . says it believed that the employee violated company rules, then proof that the employee never violated company rules does not show that the employer's explanation was false.  That proof shows only that the employer's belief was mistaken.  To prove that the employer's explanation was false, the employee must show the employer did not truly believe that the employee violated company rules.

*Main v. Ozark Health, Inc.*, 959 F.3d 319, 324-25 (8th Cir. 2020) (quoting *Pulczinski*, 691 F.3d at 1003).  Therefore, while Garavaglia may establish pretext by showing that Green did not truly believe he engaged in the conduct justifying disciplinary action, he may not establish pretext simply by showing that her honest belief was erroneous, unwise, or even unfair.  *Id.* at 325.  Garavaglia presents no evidence showing that Green's beliefs were not truly held.

Even if Garavaglia was able to show that Green's justifications for discipline were unworthy of credence, he must also show that the circumstances support a reasonable inference that the real reason Green disciplined him was because of age,

race, and/or sex.  *Main*, 959 F.3d at 327.  Garavaglia again points to the 2016 "when you retire" comment and the 2019 facial expression as well as the fact that Green promoted Kenner to the position after he retired.  As discussed above, however, Green's innocuous statement and facial expression are insufficient to show any type of discriminatory animus.  And the mere fact that Green promoted a person outside Garavaglia's protected class(es) three months after his retirement is insufficient to demonstrate that Garavaglia's age, race, or sex motivated Green's disciplinary decision made six months before Kenner's promotion.  *Id.* at 327-28.  While a plaintiff's prima facie case of employment discrimination may be strong enough in itself to show pretext, *Liles*, 851 F.3d at 821, Garavaglia's prima facie case is not strong.

Therefore, because Garavaglia did not give Green or any City official a chance to address and remedy what he perceived to be a discriminatory work environment, his constructive discharge claim fails.  And because Garavaglia has failed to produce evidence showing that Green and the City's conduct toward him was motivated by discriminatory animus, defendants are entitled to judgment as a matter of law as to Garavaglia's claim of constructive discharge.

 Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants City of St. Louis and Darlene Green's Joint Motion for Summary Judgment [81] is **GRANTED**.

An appropriate Judgment is entered herewith.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 25th day of July, 2022.